### UNITED STATES v. KELLY.

District Court, E. D. New York.
April 15, 1931.

264

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (J. Bertram Wegman, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Arthur A. Kestler, of Brooklyn, N. Y., for defendant.

INCH, J.

From the motion papers it appears that one Mortimer Kelly was arrested on the 16th day of February, 1931, by prohibition agents, charged with having sold to an agent a quart of gin. He was thereupon arraigned before a United States commissioner. It does not appear what has happened further in the case. I infer however, if held by the commissioner, he has not as yet been tried.

It further appears that immediately after his arrest and before his arraignment before the commissioner, and over his protest, the prohibition agents took the finger prints of Kelly "for the use of the Bureau of Prohibition."

These finger prints were ordered taken pursuant to the direction of the United States attorney for this district, through one of his assistants.

This method of identification constitutes a new departure in such arrests for such offenses.

In a sense, I am informed, this case of Kelly presents a so-called "test" case as to the right of the prohibition administrator and his agents to continue to take finger prints of a person not only accused of selling a quart of intoxicating liquor or less than a gallon, but of any misdemeanant prior to conviction.

Whether or not, even if guilty, the offense of Kelly is a felony or misdemeanor will depend on further and different facts, none of which is present in the papers now before me.

Kelly by this motion moves for a return to him of his finger print record on the ground that the taking thereof was unlawful, and to restrain the use thereof on the ground that the taking of them violated the Fifth Amendment of the Constitution of the United States.

The United States attorney has duly appeared for the prohibition administrator.

Whether the taking of the finger prints was lawful or unlawful, it was plainly a step in connection with the arrest and arraignment and possible trial of Kelly for violation of the Prohibition Act (27 USCA), all of which was under the control of said attorney.

It seems to me that sufficient authority and jurisdiction is present for this court to entertain and decide the motion. Go-Bart Importing Co. v. U. S., 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374.

The importance of this motion requires, it seems to me, that the court should decide the real purpose of the motion aside from possible technical objections to such immediate decision, although none is made, and should give its views at once as to the legality of this new departure.

The right to take finger prints of those convicted of felonies is not questioned here.

It is asserted by counsel for both parties that no federal statute exists expressly directing the taking of finger prints of this defendant.

In deciding the motion, therefore, the court is careful to confine its decision within the limits of the motion.

This issue, presented by the motion papers, is, whether it is lawful for the prohibition administrator to finger print, upon arrest and before arraignment or conviction, a citizen charged with the sale of a quart, or less than a gallon, of intoxicating liquor, even though such procedure is suggested and directed by the United States attorney, through an assistant charged with the duty of prosecuting such offense.

The question of the value of finger prints as a means of identification has been practically settled. It does not seem to me that it can be disputed. See the very thorough opinion of Judge Wadhams, People v. Sallow, 100 Misc. Rep. 447, 165 N. Y. S. 915.

Names and appearances may easily be assumed and changed and while, like everything else that is human, occasional mistakes appear, it is exceedingly rare for this means of identification to fail. It is said in People v. Sallow, supra, 100 Misc. Rep. 447, 165 N. Y. S. 915, 918, page 918: "It is claimed that by means of finger prints the Metropolitan Police force of London during the 13 years from 1901 to 1914 have made over 103,000 identifications, and the Magistrates' Court of New York City during the 4 years from 1911 to 1915 have made 31,000 identifications, without error."

There are many other evidences of the usefulness of finger prints in various ways not involving identification in criminal trials.

It may even be that to overcome honest objection to this mode of identification is a matter of necessary civic education and of course, because of its accuracy, those who commit crimes are particularly opposed to its use.

Nevertheless that there has been sincere opposition to the compelling of a person to submit to the taking of his fingerprints and that it is considered an indignity and an invasion of personal rights, which could only be obtained after and pursuant to legislation on the subject, seems to be its history in this state.

Two brief citations from state cases may be made. The first is as follows: "There are certain rights pertaining to mankind which have their origin independent of any express provision of law, and which are termed 'natural rights.' One of these is the right of personal liberty. This includes not only absolute freedom to every one to go where and when he pleases, but the right to preserve his person inviolate from attack by any other person." People ex rel. Gow v. Bingham, 57 Misc. Rep. 66, 107 N. Y. S. 1011, page 1014. See also 5 Corpus Juris, § 73, page 433. "The right to do this (taking finger-prints) in advance of conviction and in the absence of statutory authority has been denied."

Even after the Legislature authorized the taking of finger prints we find this statement in regard to finger prints. "An innocent man accused of crime is sometimes compelled to make sacrifice and undergo suffering for the benefit of society. Like payment of taxes and service upon juries, it is part of the price paid for the privilege of living in a country governed by law. One, for the good of all, may be required to submit to imprisonment, incur expense, and endure mental distress, because the state cannot exist without the preservation of order, and order cannot be preserved without the punishment of the guilty, which necessarily involves, sometimes, the trial of the innocent." Molineux, v. Collins, 177 N. Y. 395, page 399, 69 N. E. 727, 728, 65 L. R. A. 104.

It has therefore been the policy of this state not to authorize or allow the taking of finger prints unless pursuant to statute, that is, by an expression of the will of the people through their Legislature.

As I have already said, both counsel before me assert, and after search I am compelled to agree, that there is no direct federal statute directly authorizing the taking of finger prints of a defendant such as Kelly is.

The United States attorney claims that this absence of statute is not necessarily an insurmountable obstacle for this court can adopt and use the statute now the law in the state in which this court is located, and he specifically refers to section 940 of the Code of Criminal Procedure of this state, which went into effect July 1, 1928. This section is as follows:

"*Identifying criminals; taking of finger-prints.*—In order that the courts and public officials dealing with criminals may have accurate information as to the identity of persons charged with crime, there is hereby conferred and imposed upon the chief of police or peace officer performing such functions, in each city, town and village, and upon sheriffs, members of the state constabulary, the railway police, the aqueduct police, the state park police and all other peace officers making arrests, the power and duty of causing to be taken, upon arrest, finger and

thumb prints, and if necessary the photograph, of every person arrested and charged with a felony or with any of the misdemeanors and offenses specified in section five hundred and fifty-two of this code."

It will be observed that this section, which is so depended upon for the right here to take the finger prints of Kelly, charged with the sale of a quart of gin, relates to felonies, and it is only in case of expressly specified misdemeanors that the right is allowed even by this statute. These express misdemeanors have nothing whatever to do with federal offenses against the National Prohibition Act.

■ Before this court can thus indirectly enforce the procedure of a state statute, recourse should be had to some federal statute which allows it. The Conformity Act Rev. St. § 914, title 28, USCA § 724 which directs that practice shall conform as near as may be to that of the state covers only civil causes.

The United States Attorney therefore refers for this authority to Rev. St. § 1014 (title 18, USCA § 591). This statute, enacted in 1896, and amended in 1901, states in substance that an offender against any law of the United States may be arrested, imprisoned, and bailed "agreeably to the usual mode of process against offenders in such State."

That Congress could have meant thereby that a prohibition administrator in the future might finger print, in advance of conviction, violators against the National Prohibition Act (27 USCA) takes considerable imagination, yet, assuming that this is available, a reference to the state statute gives no such right in cases where the offense charged may be a misdemeanor.

A nearer statute than the one cited by the United States Attorney is Rev. St. § 722 (title 28 USCA § 729). This statute has been called by Justice Clifford of the Supreme Court in his dissenting opinion (Tennessee v. Davis, 100 U. S. 257, 299, 25 L. Ed. 648) as "a mere jumble of Federal law, common law, and State law, consisting of incongruous and irreconcilable regulations." This section reads:

"Proceedings in vindication of civil rights. The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of chapter 3 of Title 8, and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the Constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." R. S. 722.

The above section apparently authorizes this court to fall back upon the common law, if necessary, but no right is given by the common law to take finger prints. So far as the common law has been modified or changed by the state statute, we have already seen that the statute does not allow finger printing in cases of misdemeanors except as expressly specified which exceptions are not applicable here.

I am unable, therefore, to find any federal statute or statute in this state which applies to the question here involved.

The United States attorney, in the absence of such statutory authority, then urges that it is required (taking of finger prints) and is a duty imposed by Congress upon the Attorney General by the Act of Congress, June 22, 1870 (chapter 150, § 12, 16 Stat. 164, Rev. St. § 384, title 5, U. S. Code § 333 (5 USCA § 333), "whereunder the Bureau of Investigation of the Department of Justice must compile statistics of crime." Government's brief, page 3.

This section, however, is insufficient to support the taking of finger prints, in advance of a trial, in a case such as this before me.

Nor do I find any order of the Attorney General's directing the taking of such finger prints so as to make it a uniform practice, even if such order would be sufficient.

On the contrary, it is asserted by counsel for defendant that this is an innovation in this district, and one that does not prevail in other districts. As to this I do not know.

It would seem far better, if such procedure is to be followed, that it be uniform throughout the United States in the federal courts if it is to be useful and not dependent upon various decisions of federal courts sit-

ting in forty-eight different states with different statutory provisions in such states.

This brings us to the necessary consideration of Kelly's offense.

He is charged with the sale of a quart of gin.

Congress has from time to time legislated on this offense.

There is no necessity to quote at length; suffice it to say that originally Congress made the punishment for the sale of liquor of any quantity, for a first offense, a fine, or imprisonment not exceeding six months. Act of October 28, 1919, c. 85, title 2, § 29, 41 Stat. 316, title 27 USCA § 46.

Thereafter, and on March 2, 1929, Congress increased the punishment for such sale, so that it became a fine, or imprisonment not to exceed five years, adding the proviso that, when the court should impose sentence, it should discriminate between a slight violation and habitual sales, or attempts to commercialize violations of the law. March 2, 1929, c. 473, § 1, 45 Stat. 1446, title 27 USCA § 91.

Possibly, in order to aid the court in this discrimination, Congress, on January 15, 1931, again amended the act (27 USCA § 91) and provided, in substance, that any person who violated the law, by a sale of not more than one gallon of liquor, should be punished by a fine or imprisonment not to exceed six months, provided, however, that such defendant had not been convicted within two years of a violation of the National Prohibition Act, or was not a habitual violator thereof.

Thus we see that there has been a continual change in regard to the punishment of one selling liquor. These changes become of great importance.

It has been held that offenses created by the National Prohibition Act are not "mala in se" but are "mala prohibita," that they do not involve "moral turpitude" as such. Grader v. U. S., 21 F.(2d) 513, page 515 (C. C. A. 8). The importance of all this is that Kelly may be guilty only of a misdemeanor. There is, as we have seen, no authority in state or federal statutes for the taking of finger prints for misdemeanors except those expressly mentioned in the state statute, which do not here apply.

The test as to whether an offense is a felony or misdemeanor lies in the extent of punishment provided.

United States Criminal Code, § 335, provides: "All offenses which may be punished by death or imprisonment for a term exceeding one year, shall be deemed felonies. All other offenses shall be deemed misdemeanors." Title 18 USCA § 541.

It is unnecessary to go into the question of what crimes may be prosecuted by indictment or by information, except to say that all felonies must be charged by the grand jury by means of an indictment or presentment. This distinction is not only preserved by the Constitution, but has resulted in the discharge of a defendant. In re Wilson, 114 U. S. 417, 5 S. Ct. 935, 29 L. Ed. 89; Parkinson v. U. S., 121 U. S. 281, 7 S. Ct. 896, 30 L. Ed. 959.

The courts have often times decided what was or what was not infamous punishment, and have held that imprisonment in a penitentiary is infamous punishment. U. S. v. De Walt, 128 U. S. 393, 9 S. Ct. 111, 32 L. Ed. 485.

Consequently, in view of the changes in the prohibition law above mentioned, it would be at all times the safest course of the United States attorney to proceed as to all sales by means of indictment, for it has been stated: "When the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial except on the accusation of a grand jury." Mackin v. U. S., 117 U. S. 348, page 351, 6 S. Ct. 777, 778, 29 L. Ed. 909.

Hence, if Kelly is an habitual offender, or if he has been convicted within the past two years of an offense against the prohibition act, he cannot secure the advantage of the recent amendment to the act making his crime a misdemeanor, but is exposed to the severe punishment of the so-called "Jones Act," which has been above referred to, and he is entitled to be proceeded against by indictment.

It thus might be to the advantage of Kelly to have his finger prints taken to show his previous innocence, provided such procedure had been in effect for the past two years. He could thus show conclusively that he had not been an habitual offender, nor has he been convicted during the past two years. But no such records are available, for this is a new procedure, and at the present time, therefore, the taking of his finger prints serve no useful purpose either to himself or the government, nor can any claim of necessity be made.

To be sure, it may be urged, that this step must be taken some time but, it seems to me, it should best start with Congress, so

that there may be no mistake about the will of the people in regard to offenses which may or may not be misdemeanors.

Congress has recognized this possible confusion as to how the United States attorney should proceed by providing a further amendment, knowing that the more cumbersome process of indictment in all cases of sales was not to be desired. On December 16, 1930 section 335 of the United States Criminal Code supra (18 USCA § 541), which defines felonies and misdemeanors, was amended by adding a "proviso" that, where the penalty was that of confinement in prison for not more than six months, it should be deemed a petty offense, and all such may be prosecuted by the United States attorney by information and not by indictment.

An indictment covers all crimes, an information covers misdemeanors.

Thus, it seems to me, in the absence of any statutory authority in the state or in the federal law, unnecessary to take the finger prints of possible misdemeanants and at the sole direction of the United States attorney or an assistant, who may desire to file an information on the plea that it is important to do so, in order to ascertain the exact nature of the offense.

It is subjecting a "petty" offender to unnecessary indignity, if it may so be considered, and is unnecessary to the United States attorney as, in the case of doubt, he may readily proceed by indictment.

It is my opinion therefore, while not overlooking the advantages proved to exist in the prosecution of felonies arising from identifications available from finger prints and while also, believing in the advisability of some federal statute, duly considered, and expressed by Congress, furnishing proper aid in this direction, uniformly, to prosecutors of violators of the federal law, that, no statutory authority, either federal or state, having been shown and no necessity existing therefor at the present time, there has no good reason been shown by the government why a possible misdemeanant before trial and conviction should be harassed by having his finger prints taken at the direction of a United States attorney or his assistant, and that such practice is at present unlawful in this jurisdiction.

Therefore the motion is granted and the finger prints of Kelly, so unlawfully taken, should be returned to him, thus obviating the necessity of an injunction against their use. Submit order.