[Civ. No. 23410.   First Dist., Div. Two.   July 25, 1967.]

GEORGE SPILLMAN, as Administrator, etc., Plaintiff and Respondent, v. CITY AND COUNTY OF SAN FRAN-CISCO et al., Defendants and Appellants.

Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson for Defendants and Appellants.

Raymond H. Levy for Plaintiff and Respondent.

SHOEMAKER, P. J.—This is an appeal by defendants City and County of San Francisco and L. A. Willbrand from a judgment notwithstanding the verdict in favor of plaintiff Alice Spillman.[1]

Plaintiff sues for personal injuries allegedly sustained when the car in which she was riding was struck from the rear by a vehicle owned by the City and County of San Francisco and negligently operated by its employee Willbrand.

The pretrial conference order stated the issues raised consisted of negligence, proximate cause and the nature and extent of plaintiff's injuries and damages, if any.

The trial was before a jury and evidence was produced that on July 4, 1962, plaintiff was riding as a passenger in an automobile driven by Bernard Mullinix, who came to a stop at the intersection of Van Ness Avenue and Fell Street, where he remained stopped for approximately 30 seconds because the traffic light was red.

According to Willbrand's testimony, he initially came to a stop approximately 3 feet behind the Mullinix vehicle. After approximately 15 seconds, Willbrand saw the light change from red to green and also saw the Mullinix car start forward. Willbrand also started forward, momentarily glanced to his left and then saw that the Mullinix car had stopped. Willbrand estimated his speed at 4 to 5 miles per hour and stated that he immediately applied his brakes but was unable to avoid striking the rear of the Mullinix car.

Willbrand saw no visible damage to the Mullinix vehicle but stated that the car he was driving had sustained damage to the left headlight and grille and scratches on the bumper and left front fender. Mullinix stated that the rear bumper of his car was dented.

According to Mullinix, immediately after the collision Will-

---

[1] Alice Spillman died subsequent to entry of the judgment appealed from and by order of May 29, 1967, George Spillman, administrator of her estate, was substituted as plaintiff.

brand walked to his vehicle and stated that he was sorry and was wrong, and that he thought that the light had turned green. Mullinix stated that plaintiff was not knocked off the seat and did not strike the dashboard, windshield or any other part of the automobile, and when asked whether she was hurt, replied that she did not think so. Later Mullinix observed that her left arm and hand appeared swollen and offered to take her to the emergency hospital. She declined the offer and stated that she would go to her office and call her own doctor.

Plaintiff testified that shortly after the accident she suffered severe aches and pains and swelling of her left hand; that the following day she visited Dr. Rodgers' office, where she was examined and X-rayed. At this time she was suffering excruciating pain in her left arm and swollen left hand. Her left leg also pained her and had begun to swell. She still had a headache and had also developed an earache and pain down the side of her neck.

Plaintiff thereafter received physiotherapy treatments but testified that the pain continued to increase. For three weeks commencing July 20, 1962, she was in Notre Dame Hospital, where her neck was placed in traction and certain treatment was rendered. Upon release she continued to experience considerable pain, for which she was given various treatments.

At the time of trial she was still suffering pain throughout her body.

Plaintiff testified that she had to give up her business as a consulting psychologist because of her injuries.

Dr. Rodgers stated that he saw plaintiff a little over a year before the accident and that the general state of her health was very good. When he next saw her on the day after the accident, plaintiff complained of pain in the left neck, the back, top and side of the head, the left parietal area and the left eye, shoulder, arm and hand. In Rodgers' opinion, plaintiff had sustained a whiplash injury to the neck with a sprain of the muscles and a nerve root irritation into the left arm and head. The various complaints of plaintiff were consistent with the type of accident described by her and, in Rodgers' opinion, arose from that accident, and it was his prognosis that plaintiff would completely recover within another six to nine months.

Dr. Civello, an orthopedist, testified for the defense; he examined plaintiff two years and four months after the accident. In his opinion, there was at that time no residual difficulty as far as plaintiff's musculo-skeletal system was con-

cerned and there was similarly nothing to indicate any neurological involvement. It was also his opinion that it would normally take only six to nine months to recover from the effects of an accident of the type in which plaintiff had been involved.

The defense also established, during cross-examination of Dr. Rodgers, that he had referred plaintiff to a psychiatrist, Dr. Hoch, in early April 1963. After examining her, Hoch wrote Rodgers that plaintiff was markedly defensive and repeatedly attempted to evade and conceal information and avoid any objective eliciting of details. Although Hoch indicated that he really had no idea what was behind plaintiff's behavior, he considered it possible that "she could be malingering to some extent in the sense that she might be consciously exaggerating her disability for material gain."

The defense was also successful in impeaching plaintiff's credibility in a variety of ways: plaintiff denied any accident or injuries prior to the accident of July 4, 1962—Dr. Rodgers testified that in October 1956, plaintiff had fallen and bruised her lower spine; plaintiff herself ultimately recalled that she had experienced a sore and aching back in 1954 and that on two separate occasions in 1955 and 1956 she fell while dancing and had back X-rays taken. Plaintiff also testified that although she was not a college graduate, she had enrolled as a student and taken various courses at a Catholic college in Columbus, Ohio, which she was compelled to retract when it was shown that she had never attended any such college.

The defense also established that certain statutes enacted in 1957 (Bus. & Prof. Code, §§ 2930, 2933, 2933.5) prohibited persons who did not possess the academic requirements to become certified and registered psychologists from engaging in private practice as consulting psychologists unless supervised by a person who was so certified and registered, and that plaintiff had failed to qualify thereunder.

At the conclusion of the case for the defense, the trial court granted plaintiff's motion for a directed verdict against both defendants on the issue of liability only.

The court submitted two forms of verdict to the jury: one which found in favor of plaintiff on the issues of liability and damages and left the asssesment of such damages to the jury, and another which found in favor of plaintiff on the issue of liability and in favor of defendants on the issue of damages.

After the jurors had commenced their deliberations, they returned to the courtroom for clarification as to the form of

the verdict and were informed that they were entitled to find that plaintiff had sustained no damages as a result of defendants' negligence.

The verdict returned was in favor of plaintiff on the issue of liability and in favor of defendants on the issue of damages.

The verdict was recorded and in due time plaintiff moved for judgment notwithstanding the verdict and for a new trial. The court denied the motion for new trial, granted the motion for judgment notwithstanding the verdict and ordered judgment in the amount of $10,000 in favor of plaintiff and against defendants.

▮ It is settled that a motion for judgment notwithstanding the verdict should be granted only if a motion for directed verdict should have been granted (*DeVault* v. *Logan* (1963) 223 Cal.App.2d 802, 810 [36 Cal.Rptr. 145]) and that the cardinal requirement for the granting of either motion is the absence of any substantial conflict in the evidence. (*Robinson* v. *North American Life & Cas. Co.* (1963) 215 Cal.App. 2d 111, 118 [30 Cal.Rptr. 57].) Stated differently, a directed verdict or judgment notwithstanding the verdict may be sustained only when it can be said as a matter of law that no other reasonable conclusion is legally deducible from the evidence and that any other holding would be so lacking in evidentiary support that the reviewing court would be compelled to reverse it or the trial court would be required to set it aside as a matter of law. (*Scott* v. *John E. Branagh & Son* (1965) 234 Cal.App.2d 435, 437 [44 Cal.Rptr. 384].) ▮ The court is not authorized to determine the weight of the evidence or the credibility of witnesses. (*Palmer* v. *Agid* (1959) 171 Cal.App.2d 271, 276 [340 P.2d 303].) Even though a court might be justified in granting a new trial, it would not be justified in directing a verdict or granting judgment notwithstanding the verdict on the same evidence. (*Urland* v. *French* (1956) 141 Cal.App.2d 278, 282 [296 P.2d 568].)

▮ In the instant case, defendants contend that there was considerable conflict in the evidence as to the amount of damages sustained by plaintiff, and that since her credibility was seriously impeached, the jury was entitled to disregard much of her testimony. Under such circumstances, they argue that the court clearly abused its discretion in granting judgment notwithstanding the verdict and that it usurped their right to a trial by jury when it took upon itself to reweigh the evi-

dence and, despite the conflicts therein, to fix plaintiff's damages at $10,000.

Defendants' position is correct.

Plaintiff does make some attempt to justify the $10,000 award of damages by asserting that she incurred "medical and related expenses" in the amount of $2,407.57 and by contending that the remainder of the award was based upon loss of earnings due to her injury. However, the fact that the jury would have been justified in rendering a verdict in the amount of $10,000 clearly does not mean that the court was correct in granting judgment notwithstanding the verdict in that amount. A verdict in a substantially lower amount would also have been entirely in accord with the evidence.

Research discloses only one prior California case in which a trial court undertook to grant a judgment notwithstanding the verdict in favor of a plaintiff and to assess damages in a particular amount. In *Hozz* v. *Felder* (1959) 167 Cal.App.2d 197 [334 P.2d 159], plaintiffs sought to recover the value of merchandise sold to defendants on an open book account. Liability was not in question and the jury returned a verdict in the amount of $4,402.76. The court then granted plaintiffs' motion for judgment notwithstanding the verdict and fixed damages at $7,977.07. The appellate court, in reversing the judgment, pointed out that since the jury could have returned various verdicts which would all have been supported by substantial evidence, the court had abused its discretion in granting judgment notwithstanding the verdict and had deprived defendants of their constitutional right to a trial by jury.

The rule of the *Hozz* case applies here. The judgment notwithstanding the verdict is reversed, and the trial court is directed to enter judgment on the verdict.[2]

Agee, J., and Taylor, J., concurred.

[2]It may be noted that in the recent case of *Jehl* v. *Southern Pac. Co.* (June 1967) 66 Cal.2d 821 [59 Cal.Rptr. 276, 427 P.2d 988], the court overruled *Dorsey* v. *Barba* (1952) 38 Cal.2d 350 [240 P.2d 604], and held that the procedure of additur was constitutional in this state and that in a case where the trial court found that the damages awarded by the jury were inadequate and that the case was a proper one for the granting of a new trial limited to damages, it could, in its discretion, grant a motion for new trial unless the defendant consented to an additur as determined by the court. In the instant case, the trial court was obviously of the opinion that the damages awarded by the jury were inadequate, and it is thus extremely likely that if the *Jehl* case had been decided prior to the court's ruling on the motions for new trial and judgment notwithstanding the verdict, it would have denied the latter motion and utilized the procedure of additur. The fact remains, however, that

the court denied the motion for new trial and that plaintiff has not sought review of this ruling through the appropriate procedure of filing a cross-appeal from the judgment, which concludes the matter and precludes this court from allowing the trial court, upon remand, to determine whether or not to grant additur.