[Civ. No. 25516. First Dist., Div. Two. Mar. 20, 1970.]

PHOEBE A. MOORE, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Appellant.

## COUNSEL

Lewis & Stein and Ronald C. Winchell for Plaintiff and Appellant.

Paul N. Halvonik and Charles C. Marson as Amici Curiae on behalf of Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, George P. Agnost and William C. Gordon, Deputy City Attorneys, for Defendant and Appellant.

## Opinion

**DAVID, J. pro tem.**\*—Appellant Phoebe A. Moore sued respondents for false arrest and imprisonment. A jury verdict exculpated all defendants and Mrs. Moore appeals; the court granted plaintiff a limited judgment notwithstanding the verdict, and in the alternative, granted a new trial, and respondent City and County of San Francisco appeals.

In this case, the verdict of the jury (incorporated in the judgment) was:

"We, the jury, duly empaneled, find as follows: . . .

"*A1.* We find (for) . . . defendant CITY AND COUNTY OF SAN FRANCISCO on the issue of false imprisonment.

"*A2.* We find (for) . . . defendants CLARK and FITZPATRICK and the CITY AND COUNTY OF SAN FRANCISCO on the issue of false imprisonment.

"*A3.* We find (for) . . . defendant CLARK and the defendant CITY AND COUNTY OF SAN·FRANCISCO on the issue of false arrest.

"*A4.* We find (for) . . . defendant FITZPATRICK and the defendant CITY AND COUNTY OF SAN FRANCISCO on the issue of false arrest."

The plaintiff Phoebe Moore thereafter moved to vacate the verdict and to enter a judgment on liability in favor of plaintiff notwithstanding the verdict; and that if this was not granted, to vacate the verdict and judgment and to grant a new trial on the grounds of insufficiency of the evidence to justify the verdict; that said verdict is against the law; and errors of law occurring at the trial and excepted to by plaintiff.

Though both appellants and respondent urge us to do so, we follow the rules applicable to appeals in general and do not pass upon the weight or effect of the conflicting evidence upon which the jury's verdicts and the court's orders are based. (*Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689].)

We have examined the record, as our attention has been called to it in the briefs, in reference to the judgment and orders appealed from, and have satisfied ourselves as to the existence of those conflicts and issues which support the order granting the motion for new trial.

Code of Civil Procedure section 629 provides (in part) "If the court grants the motion for judgment notwithstanding the verdict . . . and likewise grants the motion for a new trial, the order granting the new trial shall be effective only if, on appeal, the judgment notwithstanding the verdict is

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

reversed, and the order granting a new trial is not appealed from or, if appealed from, is affirmed."

The only "judgment" before us is the order of the trial court dated October 23, 1967, and entered as such. It reads in part as follows: "For the reasons set forth in the accompanying opinion the motion for new trial and judgment notwithstanding the verdict will be denied except as follows:

"1. Motion for judgment notwithstanding the verdict will be granted as against the City and County of San Francisco on the issue of liability for the false imprisonment of the plaintiff, and a new and different verdict ordered entered finding for the plaintiff and against the City and County of San Francisco on the issue of liability for false imprisonment and the matter is directed to be retried on the issue of damages.

"2. The motion for new trial will be granted as against the City and County of San Francisco on the issue of false imprisonment on the following grounds: (a) That the verdict is not supported by the evidence; and (b) that the verdict is against the law.

"In view of the time element the above will be in lieu of a formal order."

The appealability of this purported judgment does not depend upon its ultimate validity, but upon what it purports to be. Otherwise, there would be no need for appeal. If it were treated as interlocutory only, without determining the challenge to its validity at the inception, it might well result in a fruitless trial, with delay and expense to the litigants, and an added burden to the courts.

Although all defendants were embraced in the motions, the trial court dropped out the individual defendants from its judgment notwithstanding the verdict. This, of course, was predicated upon the jury's finding the arrest was lawful, which the trial court reluctantly concluded was supported by minimal evidence. Since the connection of the individual defendants with the cause stopped when plaintiff was delivered to the patrol wagon, the trial court's opinion referred to her alleged detention, after cash bond was posted, and until plaintiff's release on such bail. There seems to have been inadequate consideration of the relationships established in liability matters by Government Code sections 820, 820.4, and 815.2.

■ A judgment notwithstanding the verdict can be sustained only when it can be said as a matter of law that no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that the reviewing court would be compelled to reverse it, or the trial court would be compelled to set it aside as a matter of law, as this court held in *Spillman* v. *City and County of San Francisco* (1967) 252 Cal.App.2d 782, 786 [60 Cal.Rptr. 809]. ■ As

Shoemaker, P. J., there stated (at p. 786): "The court is not authorized to determine the weight of the evidence or the credibility of witnesses. (*Palmer* v. *Agid* (1959) 171 Cal.App.2d 271, 276 [340 P.2d 303].) Even though a court might be justified in granting a new trial, it would not be justified in directing a verdict or granting judgment notwithstanding the verdict on the same evidence."

Usually, a judgment notwithstanding the verdict is sought by a defendant, who thereby interposes a demurrer to the evidence. Code of Civil Procedure section 629 permits the motion by an unsuccessful plaintiff. ■ If the trial court sets aside the verdict, and itself proceeds to assess damages, it deprives defendants of their constitutional right to jury trial on that question. (*Spillman* v. *City and County of San Francisco, supra,* 252 Cal.App.2d at p. 787; *Hozz* v. *Felder* (1959) 167 Cal.App.2d 197, 200 [334 P.2d 159].)

■ ▪ Since assessment of damages intrinsically involves the determination of liability, we hold that the same principle is applicable. It was error for the trial court here to declare liability, notwithstanding the verdict, and to grant a new trial as to damages only, on any factual basis. (*Jach* v. *Edson* (1967) 255 Cal.App.2d 96, 101 [62 Cal.Rptr. 925]; cf. *Gordon* v. *Strawther Enterprises, Inc.* (1969) 273 Cal.App.2d 504 [78 Cal.Rptr. 417].)

The record indicates that the trial judge predicated the judgment notwithstanding the verdict upon three additional erroneous premises. The first was, that the verdict of the jury on the issue of false arrest, exculpating the defendants including the arresting officers, limited the false imprisonment charge to the conduct of the employees of the City and County of San Francisco at the jail. The second was, that detention of the plaintiff Phoebe Moore for booking (as defined in Pen. Code, § 7, subd. 21) as a condition precedent to such release on cash bail under Penal Code section 1295, was unconstitutional and void. Hence, the court concluded, there was liability as a matter of law, thus meeting the criteria for application of Code of Civil Procedure section 629 for judgment notwithstanding the verdict. The third error, was in assuming that a split judgment could be given limited to determining the damage issue, in the same fashion a motion for new trial might be limited.

■ The judgment notwithstanding the verdict, as given, violates the established rule that there ordinarily cannot be multiple final judgments in a single action. (Code Civ. Proc., § 577; *Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 118 [199 P.2d 668]; *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357].)

Thus, the purported judgment is invalid on its face, and must be reversed. Since it is reversed, we proceed to determine the scope and validity of the alternate order granting a new trial.

■ Imprisonment based upon a lawful arrest is not false, and is not actionable in tort. (*Peterson* v. *Robison* (1954) 43 Cal.2d 690, 696 [227 P.2d 19].) ■ On the other hand, since an arrest involves detention or restraint, false arrest always involves an imprisonment, and a suit for false imprisonment automatically embraces the wrongful arrest; and two separate torts are not involved. (Cf. *Gill* v. *Epstein* (1965) 62 Cal.2d 611, 618 [44 Cal.Rptr. 45, 401 P.2d 397], arrest is a proximate cause.)

Although the verdicts purport to relate to two causes of action, false arrest and false imprisonment, they are not cumulative. As is stated in 32 Am.Jur.2d, section 2, pages 73-74, "False arrest and false imprisonment as causes of action are said to be distinguishable only in terminology. The difference between them lies in the manner in which they arise. ■ It is not necessary, to commit false imprisonment, either to intend to make an arrest or actually to make an arrest. However, a person who is falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may give rise to a cause of action for either false arrest or false imprisonment. Furthermore, unlawful detention after a lawful arrest may give rise to a false imprisonment action. It has been held, however, that a person improperly detained pursuant to a lawful arrest, though having the right to bring an action for false imprisonment, cannot bring an action for false arrest." False arrest is merely one way of committing a false imprisonment. (*Harrer* v. *Montgomery Ward & Co.* (1950) 124 Mont. 295, 305 [221 P.2d 428, 433]; *S. H. Kress & Co.* v. *Bradshaw* (1940) 186 Okla. 588, 592 [99 P.2d 508, 512].) False arrest and false imprisonment are not separate torts. In 1 Harper & James, Torts (1956) section 3.18, page 275, it is stated, "A wrongful arrest usually invades the interest in freedom . . . ."

■ The trial court's sole legal determination supporting the judgment notwithstanding the verdict was that as a matter of law, any detention of a defendant after bail is posted is unlawful, and that the delay in her release was unreasonable.[1] Penal Code section 1295 which by its terms provides for booking the defendant (Pen. Code, § 7, subd. 21) anterior to his release was held to be unconstitutional as applied to this case, as violative of the Eighth Amendment to the United States Constitution and the California Constitution, article I, section 6.

---

[1] The trial court concluded that the delay was unreasonable assuming the validity of Penal Code section 1295, citing *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863], and *Teel* v. *May Dept. Stores Co.* (1941) 348 Mo. 696 [155 S.W.2d 74, 137 A.L.R. 495].

Penal Code section 1295, so far as applicable, provides: ". . . after the arrest and *booking* of a defendant for having committed a misdemeanor, instead of giving bail may deposit with the clerk of the court in which the defendant is held to answer or notified to appear for arraignment, the sum mentioned in the order, or if no order, in the schedule of bail previously fixed by the judges of said court, *and upon delivering to the officer in whose custody defendant is a certificate of the deposit, defendant must be discharged from custody.*" (Italics supplied.)

Counsel for Mrs. Moore and amici curiae stress the latter clause, and claim the first, requiring the booking as a condition precedent, is unconstitutional. The trial court agreed. We do not, and the order setting aside the verdict is not supportable as a pure question of law.

 There is no right not to be booked, because the charge is a misdemeanor, as suggested by the plaintiff Phoebe Moore and amici curiae. (*United States* v. *Laub Baking Co.* (N.D. Ohio 1968) 283 F.Supp. 217; *Napolitano* v. *United States* (1st Cir. 1965) 340 F.2d 313, 314 and cases cited; *Smith* v. *United States* (D.C. Cir. 1963) 324 F.2d 879, 882.)

We do not regard *People* v. *Hevern* (1926) 127 Misc. 141 [215 N.Y.S. 412] as controlling. Fingerprinting and photographing are not compulsory self-incrimination. (*People* v. *Jones* (1931) 112 Cal.App. 68, 71-72 [296 P. 317].) The acceptance of bail under the section is subject to a reasonable condition precedent, the booking. This distinguishes such cases as *Moran* v. *City of Beckley* (4th Cir. 1933) 67 F.2d 161, 164-165. In *United States* v. *Kelly* (E.D. N.Y. 1931) 51 F.2d 263, 268, the contrary rule was based on an absence of statutory authority.

Defendant city and county, proceeding with plaintiff's booking, did so lawfully. By the booking, as defined in Penal Code section 7, subdivision 21, *supra,* her right to release was being perfected. By proceeding with this process, the police officers of the city and county were not denying or impairing her right to release.

It is true that posting of cash bail serves only the purpose of undergirding a defendant's obligation to appear to plead and answer. (*People* v. *Wilcox* (1960) 53 Cal.2d 651, 656-657 [2 Cal.Rptr. 754, 349 P.2d 522].) Where sureties are involved, they assume responsibility for such appearance. With cash bail, the only immediate compulsion to appear is the defendant's aversion to losing the money. Consequently antecedent photographing and fingerprinting become part of the bail process where cash bail is posted, giving the authorities legitimate means to identify and apprehend a defaulting defendant. It is proper to hold that a defendant giving cash bail thereby impliedly assents to the antecedent requirements of booking. We do not mean to infer that any such consent is necessary.

One who has posted bail is entitled to claim that he has been unlawfully imprisoned, for so much of the imprisonment as occurs after the period of necessary delay. (*Gorlack* v. *Ferrari* (1960) 184 Cal.App.2d 702, 710 [7 Cal.Rptr. 699]; *Kaufman* v. *Brown* (1949) 93 Cal.App.2d 508, 511 [209 P.2d 156]. Both involved unreasonable delay in taking prisoners before a magistrate.) But delay, per se, is not always held unreasonable.

For instance, after posting of bail it is within official discretion whether to immediately release an intoxicated person, or not, if to do so would endanger him or society (*Evans* v. *Municipal Court* (1962) 207 Cal.App.2d 633, 636 [24 Cal.Rptr. 633]) and the same is true as to the right of a mentally ill person to bail. (*Bean* v. *County of Los Angeles* (1967) 252 Cal.App.2d 754, 757 [60 Cal.Rptr. 804].)

An intentional failure to advise a defendant he was entitled to release and ensuing detention, gives rise to a cause of action. (*Shakespeare* v. *City of Pasadena, supra,* 230 Cal.App.2d 375, 384; Gov. Code, § 820.4.)

In the present case, there was testimony concerning delay in communicating the fact that bail was posted; delay because of a pileup of 20 or more prisoners being booked; delay because of Mrs. Moore's physical collapse while in processing, and her insistence upon medical services by a private doctor, rather than the jail physician; and conflicting evidence as to her personal cooperation or lack of it; and the inability of her husband to come, receive and care for her, until sometime later than 6:30 a.m. when she could have departed.

The trial court clearly believed there was no reasonable excuse for the delays, as a matter of law. Conflicting evidence, however, renders his conclusion inapplicable on the motion for judgment notwithstanding the verdict, without impairing its validity as a conclusion supporting the order for new trial.

Although in paragraph 1 of its purported judgment, the court granted a new trial as to damages only, this was a portion of that invalid judgment, and not the new trial, in the alternative, under Code of Civil Procedure section 629.

Paragraph 2 is construed to be the alternative order for new trial, contemplated by Code of Civil Procedure section 629, and relates to the judgment entered upon the verdict of the jury. No issue is raised as to the limitation of the new trial as to the defendant City and County of San Francisco only. The motion made applied to all defendants. The grounds assigned were (1) insufficiency of the evidence to justify the verdict, (2) said

verdict is against law, (3) errors of law occurring at the trial and excepted to by plaintiff.

██ Under Code of Civil Procedure section 657, when a new trial is granted upon the ground of insufficiency of the evidence, the order shall so specify in writing and shall be filed with the clerk within 10 days after the motion is granted. The trial court's written opinion was incorporated by reference in the order for new trial on the first two grounds, and the specification is adequate. (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 115 [65 Cal.Rptr. 315, 436 P.2d 315].)

The evidence bearing on the arrest of Mrs. Moore was stated to be "terribly, terribly weak. . . . This testimony is, to say the least, subject to a great deal of doubt in the mind of the Court, and it was apparently only 'remembered' by the officers the last few days of trial. This despite the fact that there had been police investigations, a criminal trial [in which Mrs. Moore was acquitted] and depositions. However, the jury chose to believe the officers' testimony, and if it be true, it would amount to an interference." ██ It is the duty of a trial court to grant a new trial where he believes the evidence is unreliable. (*Hunt* v. *United Bank & Trust Co.* (1930) 210 Cal. 108, 118 [291 P. 184].)

██ The trial court has the power to grant a new trial even though the evidence might justify a verdict. (*Gustason* v. *Speak* (1927) 85 Cal. App. 18, 20 [258 P. 725].) ██ It is the trial judge's duty to set aside the jury's verdict whenever his conscience is impressed with the injustice thereof. (*Perry* v. *Fowler* (1951) 102 Cal.App.2d 808, 811 [229 P.2d 46].)

As to "false imprisonment by unreasonable transportation," the court commented: "It all seems to be a factual matter and the Court cannot say that the jury's findings were clearly in error. The jury found this despite the fact that taking the action of these officers from the four corners, it appeared that their actions were all too typical of the arrogance which a few officers manifest towards the general public, particularly towards a member of the public in trouble. This conduct often brings the entire police force into disrepute and creates a real problem in citizen cooperation in the enforcement of law.

"However, the jury didn't seem to see it that way, and the Court is not disposed to. hold that mere arrogance and imperiousness of themselves constitute cruelty."

However, the court stated: "*Assuming section 1295 of the Penal Code to be constitutional, did the officers act reasonably:* The answer has to be no. The evidence is undisputed, except for the wildest conjecture, that bail

was placed five or six hours prior to the time the plaintiff was released. There were various conjectural arguments advocating the possibility that bail may have been put up later, but they are pure speculation. The only direct testimony, or the only testimony from which any reasonable inference could be drawn, establishes bail put up around 3:00 or 3:30 in the morning. Now assuming that the police did have the right to hold the plaintiff until she submitted herself to being booked, the fact is undisputed, and this is from the mouth of the defendants' own witnesses, and they are bound by the same, that when the 7:00 o'clock shift came on, this lady was cooperative, ready to be fingerprinted, and she still wasn't released for another hour and a half. The record is completely devoid of evidence that at this period, at least, she failed to be booked for any reason except nobody got around to doing it. This clearly constitutes false imprisonment. See *Shakespeare* v. *City of Pasadena,* 230 Cal.App.2d 375 [40 Cal.Rptr. 863]; *Teel* v. *May Department Stores,* 348 Mo. 696 [155 S.W.2d 74, 137 A.L.R. 495]."

In the addenda to the opinion, the court concluded that "By reason of the actions of the agents of the City and County of San Francisco, the City and County of San Francisco falsely imprisoned plaintiff for the period between the time of the posting of bail and the time she was actually released." This was only alternatively based upon the erroneous ground that Penal Code section 1295 was unconstitutional, as discussed above.

 Since the trial judge acted upon the evidence as he viewed it, alternatively to his view of the code section, the ruling made was well within his discretion. (*Piercy* v. *Piercy* (1906) 149 Cal. 163, 166 [86 P. 507]; *Perry* v. *Fowler, supra,* 102 Cal.App.2d 808, 811; *Silcott* v. *City of Monrovia* (1940) 41 Cal.App.2d 508, 511 [107 P.2d 95]; *Jones* v. *City of Los Angeles* (1951) 104 Cal.App.2d 212, 217 [231 P.2d 167].)

Our examination of the record has been sufficient to find there are grave conflicts of evidence on all the determinative points.

 The court is authorized to determine the effect of the evidence, contrary to the determination of the jury. (*Helle* v. *City and County of San Francisco* (1942) 54 Cal.App.2d 571, 572 [129 P.2d 461].) If there is any evidence that would uphold and substantiate a verdict for the moving party, if the jury had decided for her, the court is sustained in ordering a new trial. (*Van Antwerp* v. *Smith* (1940) 39 Cal.App.2d 458, 459 [103 P.2d 446].)

 No abuse of discretion is shown in disallowance of expenditures for a daily transcript as costs (*Puppo* v. *Larosa* (1924) 194 Cal. 721, 723

[230 P. 440]), no formal order for the same having been made. In a civil case, unless there is an express order by the court directing the preparation of a daily transcript of proceedings, chargeable to both parties, the general rule of Government Code section 69953 prevails: "The fees for transcripts and copies ordered by the parties shall be paid by the party ordering them." Since a daily transcript involves the use of more than one reporter, and sometimes certain inconvenience and distraction in their frequent change-overs or reliefs, such an arrangement when unilateral should have the approval of the court. We cannot say as a matter of law that the verbal acquiescence to the city and county's request constituted the order required to place the costs equally upon both parties under the code section. (*Walton* v. *Bank of California* (1963) 218 Cal.App.2d 527, 547-548 [32 Cal.Rptr. 856], and cases cited therein.)

No appeal lies from denial of a motion for judgment on the pleadings. (Code Civ. Proc., § 904.1.) No appeal lies from an opinion as such, but as the order granting the new trial incorporates the judge's memorandum, as indicated above, it is *pro tanto* considered in relation thereto.

The City and County of San Francisco urges that the order of the trial court granting a new trial to appellant on the issue of false imprisonment be declared limited to such alleged false imprisonment as may be determined to have arisen following posting of bail. We have held that the issues of false arrest and imprisonment embrace a single tort, and that the cause of action may not be split. The trial court, stating the evidence to justify the arrest of Mrs. Moore was terribly weak and subject to a great deal of doubt, was impelled by his duty as 13th juror to give effect to that independent judgment, and to act accordingly upon the motions for a new trial despite the verdicts of the jury on the issue of false arrest and resulting imprisonment. (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633-634 [262 P.2d 14]; *Lippold* v. *Hart* (1969) 274 Cal.App.2d 24, 26 [78 Cal.Rptr. 833] and cases cited.) While it may be urged that the order granting the new trial should be clarified by the trial court, in view of the determinations herein, and restricted to its assigned reasons for granting it, and denying that as to the individual defendants, the trial court has lost all jurisdiction to do so. (*Lippold* v. *Hart, supra,* 274 Cal.App.2d 24, 26-27, hearing denied.)

The judgment notwithstanding the verdict is reversed. Appeal from the order denying a new trial as to the individual defendants does not lie, and the same is dismissed. (Code Civ. Proc., § 904.1.) The partial judgment

for the individual defendants on the issue of false arrest and imprisonment is reversed. The order granting a new trial to appellant is affirmed extending to the entire cause. Plaintiff-appellant will have her costs on appeal.

Shoemaker, P. J., and Taylor, J., concurred.