[Civ. No. 9820. Fourth Dist., Div. Two. Nov. 6, 1970.]

HOWARD JOSLYN et al., Plaintiffs and Appellants, v.
RONALD GLEN CALLISON, Defendant and Respondent.

**COUNSEL**

Hafif & Shernoff and William Shernoff for Plaintiffs and Appellants.

Garrett & Dimino and Franklin J. Dimino for Defendant and Respondent.

**OPINION**

**KERRIGAN, J.**—This is a tort action wherein the plaintiffs sought to recover damages for the alleged wrongful death of their 19-year-old son, who was killed when a sports car in which he was riding, being driven by the defendant, collided with a freeway fence. The plaintiffs proceeded on two theories: (1) Their son was a passenger at the time of the accident and the defendant was negligent in the operation of the car; and (2) their son was a guest at the time of the accident and the defendant was guilty of willful misconduct in driving and managing the car.

This appeal is from a judgment entered upon a directed verdict in favor of defendant. In directing the jury to return a verdict in defendant's behalf, the trial court ruled, in effect, that the decedent was a guest as a matter of law and that there was no evidence of willful misconduct.

The defendant, Ronald Glen Callison, the decedent, George Joslyn, and another youngster, James Dark, were close friends, residing in the Ontario-Pomona area. On several occasions, the three had discussed the prospects of joining a naval reserve unit. Dark had received information indicating that the Long Beach naval unit had a large quota and that the three of them would have a better chance of being admitted there than in Pomona.

On May 8, 1967, the defendant worked at his usual job as a carpet layer, starting at 7:30 a.m. After leaving work, he returned to the apartment which he and the decedent jointly occupied. The two of them apparently discussed going to Long Beach, although the defendant could not recall the exact details of the conversation. In any event, they left their residence in the early evening, picked up Dark, and started for Long Beach with the defendant driving. There was no discussion about any payment for the ride or the use of any particular car[1] at the time they left Dark's home. When they arrived at the naval station, they discovered that the reserve meeting had already concluded, so they started towards home.

Two stops were made on the return trip: the first at a coffee shop, the sec-

[1]Each of the three boys had his own car.

ond at a gas station. They remained at the coffee shop for 1-1½ hours. No intoxicating beverages were served at the coffee shop, nor was there any evidence of drinking at any time en route. The defendant did not appear to be sleepy during the time the three were in the coffee shop; rather, he appeared normal in every respect. After leaving the coffee shop, they proceeded to a gas station with the defendant still driving. There was no conversation with reference to payment for the gas. While at the gas station, Dark gave the defendant $.50 for gas. The defendant also testified that he received between $.50 and $2 from the decedent. After the car was serviced, the trio left the gas station and were on their way home via the Garden Grove Freeway when the accident occurred.

Dark testified that he went to sleep prior to the accident, but before falling asleep, the defendant appeared to be driving in a careful manner. The defendant had no recollection of anything after leaving the gas station.

The investigating officer testified that the sports car ran into the freeway divider fence about 11:45 p.m. The car appeared to be in good mechanical condition. When he interviewed the defendant, the latter was incoherent both at the scene and at the hospital.

Plaintiffs raise the following issues in urging that the trial court erred in ordering the jury to return a directed verdict in favor of the defendant: (1) The issue as to whether the decedent was a guest or passenger for the jury's determination; and (2) the evidence was sufficient to establish willful misconduct.

■ A directed verdict may be sustained only when it can be said as a matter of law that no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that the reviewing court would be compelled to reverse it as a matter of law. (*Spillman* v. *City & County of San Francisco,* 252 Cal.App. 2d 782, 786 [60 Cal.Rptr. 809].) Stated in another fashion, a directed verdict may be properly granted if, after disregarding conflicting evidence, and indulging in every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence of sufficient substantiality to support a jury verdict in plaintiff's favor. (*Beck* v. *Kessler,* 235 Cal.App.2d 331, 335 [45 Cal.Rptr. 237]; *Walters* v. *Bank of America,* 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259]; see also *Grafton* v. *Mollica,* 231 Cal.App.2d 860, 862 [42 Cal.Rptr. 306].)

California's Guest Statute, embodied in section 17158 of the Vehicle

Code, provides as follows: "No person . . . who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride . . . has any right of action for civil damages against the driver of the vehicle . . . on account of personal injury to or the death of the . . . guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

■ The primary policy underlying the guest statute is to prevent recovery for ordinary negligence by a guest who has accepted the hospitality of the owner or driver. (*Martinez* v. *Southern Pacific Co.*, 45 Cal.2d 244, 253 [288 P.2d 868].) A secondary policy is to prevent collusive suits between friends where the driver admits negligence in order to shift the burden to his insurance carrier. (*Stephan* v. *Proctor*, 235 Cal.App.2d 228, 230 [45 Cal. Rptr. 124]; 26 Cal.L.Rev. 251, 252.)

■ The distinction between a guest and a passenger has been defined as follows: "A person who accepts a ride does not cease to be [a] guest and become a passenger merely by extending customary courtesies of the road, such as paying bridge or ferry tolls . . . and . . . the sharing of expenses does not destroy the host and guest relationship if nothing more is involved than the exchange of social amenities and reciprocal hospitality. [Citations.] Where, however, the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, the rider is a passenger and the driver is liable for ordinary negligence. [Citations.] This is, of course, true whether the trip is for the joint pleasure of the participants or is of a nonsocial nature." (*Whitmore* v. *French*, 37 Cal.2d 744, 746 [235 P.2d 3].) It is not the purpose of the trip which is the central factor, but whether the compensation received by the driver was a motivating influence in his decision to furnish transportation to the rider; a rider does not accept the hospitality of the driver when the rider "pays his own way" and the driver furnishes the transportation because of this circumstance; it is the element of compensation and not the purpose of the trip which is the relevant criterion in ascertaining whether the rider is merely accepting the hospitality of the driver. (*Nevarez* v. *Carrasco*, 1 Cal.3d 518, 522 [82 Cal.Rptr. 721, 462 P.2d 577].) Generally, it is a factual issue whether the principal inducement for a ride is friendship, kindness, pleasure, or a bargained-for ride. (*Baker* v. *Novak*, 144 Cal.App.2d 514, 518 [301 P.2d 257]; *Stephan* v. *Proctor, supra*, 235 Cal.App.2d 228, 231.)

■ Applying the foregoing principles to the case under review, the issue as to the decedent's status should have been submitted to the jury for the purpose of determining whether the compensation given the driver by the

two riders was the motivating influence for furinshing the ride. While there was no direct evidence reflecting an agreement between the three boys to share expenses, both riders gave the defendant money. The mandate of *Nevarez, supra,* seems clear: ■ Once it is established that compensation flows from the rider to the driver—a sharing of expenses—the rider's status presents a jury question.

Inasmuch as the trial court erred in granting a directed verdict upon the negligence cause of action, the reversal of the judgment will not require resolution of the second issue raised on appeal, to wit, whether the trial court also erred in directing a verdict on the willful misconduct theory. However, a limited discussion of the facts and law presented in the first trial might be of assistance to the trial court in the event the willful misconduct theory is again advanced upon retrial.

There were no eyewitnesses to the accident. Driving conditions were excellent. The car was in good mechanical condition. Defendant was unable to recall any of the events immediately preceding the accident, except that he had received money from the riders at the service station stop. He had no recollection of the crash or what transpired at the hospital. Dark was asleep at the time of the crash. However, his testimony established that there had been no drinking, negligent operation of the car, or misconduct on the part of the driver at the time he dozed off. ■ Absent any evidence of the proximate cause of the accident, the most that can be inferred is that the defendant fell asleep just before the crash.

Where there is no evidence that the driver knew, or should have known, he was drowsy, and the only evidence tending to prove the cause of the accident consists of the inferences to be drawn from the physical conditions and circumstances surrounding the crash, the evidence is insufficient to show willful misconduct. (*Fiske* v. *Wilkie,* 67 Cal.App.2d 440, 448-452 [154 P.2d 725]; *Forsman* v. *Colton,* 136 Cal.App. 97, 102 [28 P.2d 429]; see *Rode* v. *Roberts,* 11 Cal.App.2d 638, 642 [54 P.2d 498]; *Traxler* v. *Thompson,* 4 Cal.App.3d 278, 287-289 [84 Cal.Rptr. 211].) ■ However, where the driver is aware of his drowsiness because he momentarily dozes off and yet continues to drive and falls asleep again, the question of willful misconduct is for the jury. (*Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129, 136-137 [299 P.2d 668]; *Halstead* v. *Paul,* 129 Cal.App.2d 339, 340-341 [277 P.2d 42]; *Pennix* v. *Winton,* 61 Cal.App.2d 761, 764-765 [143 P.2d 940, 145 P.2d 561]; *Erickson* v. *Vogt,* 27 Cal.App.2d 77, 80-82 [80 P.2d 533].)

This tribunal has no conception of what evidence will be presented at

retrial upon the issue of willful misconduct. Consequently, the foregoing discussion of the willful misconduct theory is merely for the trial court's guidance upon retrial.

The judgment is reversed.

Gardner, P. J., and Tamura, J., concurred.