[No. C068750. Third Dist. Nov. 26, 2012.]

COUNTY OF GLENN, Plaintiff and Respondent, v.
PATRICK FOLEY, as Trustee, etc., Defendant and Appellant.

COUNSEL

Marion's Inn, Thomas M. Freeman, Kennedy P. Richardson, Yvonne M. Pierrou, Sarah King and David B. Anderson for Defendant and Appellant.

Freeman Firm, Arnold J. Wolf; and Huston T. Carlyle, Jr., County Counsel, for Plaintiff and Respondent.

OPINION

**BUTZ, J.**—Following the grant of a motion in limine to exclude the testimony of the defense appraiser in this action for eminent domain, the parties stipulated to a valuation of the real property in the amount the appraiser for plaintiff County of Glenn (the County) had set, and the trial court entered judgment in accordance with this stipulation. Defendant Patrick Foley, trustee of a marital trust holding fee title to the subject property, filed a timely notice of appeal.[1]

    Foley contends the use of a motion in limine to eviscerate his case violated his right to a jury trial; the trial court's reliance on evidence outside the record to grant the motion was error; and the substantive bases for the ruling were incorrect. We agree with the latter point and shall reverse the judgment with directions to the trial court to deny the motion in limine.

[1] There were numerous other defendants named in the eminent domain complaint, with assorted nonfee interests in the subject property. Patrick Foley is the only defendant presently appearing in the litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

The County submitted the following facts in support of its July 2010 motion in limine. It has been renting nearly 200 acres on Foley's property for use as a landfill since 1971. In 2008, the board of supervisors determined that the County should acquire a fee interest in the existing leased land (which was nearing capacity) along with additional acreage around it (to enlarge it and maintain a buffer zone), and to take title to incidental acreage that would otherwise become landlocked as a result of the County's acquisition of the landfill, expansion zone, and buffer zone. It therefore filed the eminent domain action in February 2009, seeking to acquire approximately 439 acres.

As described in the report of the defense expert, Gregory House, the subject property at issue is located in a rural agriculturally productive area that is "well-suited to a variety of crops, including fruit and nut orchards" if "sufficient irrigation is available and soil quality is not a limitation." In the area generally surrounding the subject property, the agricultural uses include rice, row crops, olive orchards, almond orchards, and livestock grazing (which is the current use for the subject property adjacent to the present landfill). The soil ratings for the property are II to IV on one scale (I being the best, and V to VIII being unsuitable for agriculture) and an average of 39.5 on the other scale (100 being optimal). Well water sufficient to sustain 400 acres of olives is available at a cost of about $245,000. Because "the anticipated return from an orchard use compared to grazing exceeds the cost to develop the necessary irrigation supply, . . . the highest and best use of the subject [land] is orchard land such as olives."

House identified seven comparable sales in the period of 2006 to 2008.[2] He provided a description of his methodology for adjusting the value of quantitative and qualitative variances between these otherwise comparable orchard properties and the subject property. For five of the properties, he had to assign a quantitative value to improvements (buildings, personal property, *existing* orchards, or the presence of a gas well in one instance) "if sufficient data [were] available to reliably determine an appropriate quantitative adjustment" and then deduct this from the sales price.[3] He also applied qualitative factors (e.g., topography and soil quality) to adjust the prices.[4] Calculating the resulting price per acre (and deducting the costs of developing an

---

[2] House had initially identified eight, but ultimately deleted one sale that he considered redundant.

[3] House's report states that he estimated the value of existing orchards from cost studies that the University of California Cooperative Extension had prepared. In his deposition, he stated that he derived the value of the buildings and other improvements from conversations with other appraisers.

[4] The County does not dispute the legitimacy of House's qualitative adjustments, so they do not play any further part in this opinion.

irrigation supply), House believed the reasonable value of the subject property was approximately $1.7 million.

In contrast, the County's expert, Ray Howard, believed the status quo of grazing land was the best and highest use of the gently rolling topography of the subject property. In support of this conclusion, Howard noted only that the soil types present on the subject property *generally* lent themselves to pasture use; he did not discuss whether a conversion to orchards was feasible. Based on the sales price of nine comparable plots of grazing land, Howard set the reasonable value of the subject property at approximately $637,000.

In its motion in limine, the County contended that House's valuations of the "non-land components" on the comparable properties was a violation of Evidence Code section 822, subdivision (a)(4) (hereafter section 822(a)(4)).[5] It also contended that the other properties were not comparable with the subject property and thus did not comply with section 816, which sets forth foundational criteria for comparable sales, including the requirement that other properties be "sufficiently alike" in "character, size, situation, usability, and improvements." The County asserted that improvements, irrigation, or an ability to grow row crops made all the other properties used by House unsuitable as comparable sales.

In its initial ruling, the trial court agreed that House's adjustments to the values of the comparable properties violated section 822, citing *Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083 [125 Cal.Rptr.2d 12] (*Emeryville*). In response to a request for "clarification" from the County regarding the alternative basis for its motion in limine (§ 816), the trial court issued an amended ruling in which it concluded the subject property's character (rolling hills, without irrigation) was not comparable to the other sales on which "plaintiff" (*sic*) relied, because it was not cost effective to improve the property for olive orchards.[6] This prompted another letter from the County pointing out that the court's ruling had confused "plaintiff" with defendant. The trial court then issued a "corrected amended ruling," reiterating that "plaintiff's expert has indicated *in his deposition* that the properties that defendant's expert used are not sufficiently similar in nature to the subject property and *certainly the cost of improving the subject property to olive orchard would be cost prohibitive*." (Italics

---

[5] Undesignated statutory references are to the Evidence Code.

Section 822 provides, in pertinent part: "In an eminent domain . . . proceeding . . . , the following matter is inadmissible as evidence and shall not be taken into account as a basis for an opinion as to the value of property: [¶] . . . [¶] (4) An *opinion* as to the value of any property or property interest other than that being valued." (§ 822(a)(4), italics added.)

[6] As a basis for this conclusion, the court cited the *deposition* of Ray Howard, which the County had not submitted in support of its motion. (Neither party explains how it came to the trial court's attention for purposes of the motion in limine.)

added.) On this basis, the court concluded that all of the properties used by House were not comparable and excluded them pursuant to section 816.

## DISCUSSION

### I. Right to Trial by Jury

■ Foley suggests the use of a motion in limine to exclude the entirety of his appraiser's opinion deprived him improperly of his right to a jury trial on the question of just compensation for his property. However, the "involvement of a constitutional right does not change the rules of evidence in an eminent domain proceeding. It does not deny due process to cut off a litigant's right to present evidence where the party fails to comply with established evidentiary standards for appraisal methods. Thus, when a valuation expert employs an unsanctioned methodology, the opinion may be excluded in part or in whole in the discretion of the trial court." (*City of Stockton v. Albert Brocchini Farms, Inc.* (2001) 92 Cal.App.4th 193, 198 [111 Cal.Rptr.2d 662], fn. omitted.)

Thus, if the trial court was correct in concluding that House used an improper methodology, the constitutional guarantee of a jury trial on the valuation issue would not be a bar to the exclusion of the expert's opinion. On the other hand, if the trial court erred in its application of the Evidence Code, the addition of a constitutional gloss would not add anything to our analysis. We therefore do not address the question further.

### II. The Trial Court's Use of the Howard Deposition

Although we ordinarily review a trial court's decision to exclude evidence for an abuse of discretion (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 363, par. (8), p. 419), when the nonstatutory procedure of a motion in limine strays beyond its traditional confines and results in the entire elimination of a cause of action or a defense, we treat it as a demurrer to the evidence and review the motion de novo, lest it be used to evade the more exacting standards for such a motion. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593–1595 [71 Cal.Rptr.3d 361].)[7]

Foley contends the trial court could not properly consider the Howard deposition that was not submitted to it in connection with the motion in

---

[7] In addition, *Emeryville, supra,* 101 Cal.App.4th at page 1095, held that section 822's categorical exclusions of certain types of evidence do not confer *any* discretion on a trial court to act and therefore rulings pursuant to section 822 are subject to de novo review on appeal. We do not express any view on the correctness of this holding.

limine. The County asserts the reliance of the trial court on the Howard deposition is immaterial, given our de novo standard of review. This is correct. We will accordingly disregard any evidence that converting the subject property to an orchard is either infeasible or not cost effective (noting also that this evidence *at best* created a triable issue of fact, rather than negating the contrary House opinion as a matter of law on the question of the admissibility of the House opinion).

## III.   Section 822

In a 1960 report that was the basis for the predecessor of the present Evidence Code provision, the California Law Revision Commission noted that *opinions* regarding the value of comparable property (as opposed to objective evidence such as sales price) should be excluded from determining just compensation "because their consideration would require the determination of many other collateral questions . . . which would unduly prolong the trial of condemnation cases. Opinion evidence on value should be confined to opinions of the value of the property being taken . . . ." (Recommendation and Study Relating to Evidence in Eminent Domain Proceedings (Oct. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. A-8 (Recommendation); accord, *Sacramento & San Joaquin Drainage Dist. v. Jarvis* (1959) 51 Cal.2d 799, 804 & fn. 3 [336 P.2d 530]; 1 Witkin, Cal. Evidence (4th ed. 2000) Opinion Evidence, § 98, p. 646, § 116, p. 661 (Witkin); see *City of Corona v. Liston Brick Co.* (2012) 208 Cal.App.4th 536, 542 [145 Cal.Rptr.3d 702] [§ 822(a)(4) exclusion is known as " 'the rule against appraising the comparable' "].)

■    As we stated two score years ago, the *limited* purpose of this statutory provision "was to exclude a party who produces an expert appraiser from using his *opinion* of the value of property X *as a whole* as a prop in proving the value of the subject property" (*State of Cal. ex rel. State Pub. Wks. Bd. v. Stevenson* (1970) 5 Cal.App.3d 60, 65, italics added), as opposed to an opinion regarding one of the combination of underlying factors that *influence* the comparable nature of an objective sales price. In upholding the admission of testimony regarding an appraiser's adjustment to comparable sales (to reduce any enhanced value from improvements resulting from the proposed condemnation project), *Merced Irrigation Dist. v. Woolstenhulme* (1971) 4 Cal.3d 478 [93 Cal.Rptr. 833, 483 P.2d 1] (*Merced Irrigation*), asserted that "[a]n appraiser's testimony relating *to adjustments* to be made in 'comparable sales . . .' . . . does not normally raise collateral issues of great magnitude"

(i.e., the Law Revision Com.'s stated concern) and instead "is a most natural and, indeed, *necessary* component" of the comparable sales approach to valuation because another parcel of land generally will not be *"precisely equivalent."* (*Merced Irrigation*, at p. 502, italics added;[8] see *Emeryville, supra*, 101 Cal.App.4th at p. 1094 [describing comparable sales approach generally as identifying properties "deemed to resemble the condemned property in relevant respects" and then deriving a market value after *"typically* adjusting the price to reflect such matters as material differences between the properties" (italics added)].)

In the present case, the values of the comparable properties House identified are tied to an objective measure: their sales price. The County did not challenge the House adjustment to a sales price on the basis of his *methodology* in accounting for any material differences. Rather, it asserted his adjustment opinions were inadmissible *qua* opinions under section 822. This flies in the face of the distinction drawn in *Merced Irrigation* (and in our *Stevenson* opinion) between pure opinions of value and opinions regarding the need to adjust a sales price with various factors.

We do not discern any basis in *Emeryville* to support the trial court's ruling under section 822. In *Emeryville*, there was a particular comparable sale that yielded an objective value per square foot based on the total sales price. However, the parties to the transaction (a commercial "big box" project) included a recital in their contract, which divided the project along an intersecting municipal boundary and allocated a much higher portion of the purchase price to the part in Emeryville than the part in Oakland. The defendant's appraiser then based his value of the condemned property on this higher value. (*Emeryville, supra*, 101 Cal.App.4th at p. 1100.) The trial court allowed use of the recital as a basis for assigning a higher value to the sales price of the comparable property. (*Id.* at pp. 1100–1101.) The *Emeryville* court concluded the appraiser had simply incorporated the *opinion* of the parties to the comparable transaction as to the proper allocation of value between the portions of the property, which did not have any objective arm's-length basis, and thus violated the prescription in section 822. (*Emeryville*, at pp. 1101–1102.)

---

[8] *County of Los Angeles v. Union Distributing Co.* (1968) 260 Cal.App.2d 125, 130 [67 Cal.Rptr. 107] held that adjustments to comparable sales to account for substantial improvements not present on the long vacant subject property are inadmissible opinions of the value of a property other than the subject property under section 822. To the extent *Union Distributing* is inconsistent with *Merced Irrigation*, we must deem it to be implicitly disapproved.

Had the House adjustments simply represented his best *guess*, this would be akin to *Emeryville*. However, adjustments for the value of existing orchards came from university cost studies. The estimates of the values of other improvements is less clear, with the House deposition indicating only that he consulted with other appraisers. *Consultive* guesswork about a value to assign to an improvement would not take the result out of the realm of proscribed pure opinion. But the County, with the burden of persuasion in the motion, failed to establish that this *in fact* was what occurred (as opposed to the consultation having some basis in sales of properties that had and did not have similar improvements). The County therefore cannot establish that it was entitled to the drastic remedy of excluding Foley's appraisal evidence *in its entirety* based on mere speculation to this effect (as opposed to challenging the weight that a jury should give the adjustments of this nature at trial). We thus conclude section 822 is not a proper basis for excluding the House appraisal.

## IV.   Section 816

■   To again quote the material kernel of the statute, the essence of comparability is recent and local sales "*sufficiently* alike in respect to character, size, situation, usability, and improvements" so that the price "may fairly be considered as *shedding light*" on the value of the condemned property. (§ 816, italics added.) This came from language employed in *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 678 [312 P.2d 680] and reiterated in *Merced Irrigation, supra,* 4 Cal.3d at p. 500 (*sufficiently* similar to have *some bearing* does not require *substantial* comparability), *County of San Luis Obispo v. Bailey* (1971) 4 Cal.3d 518, 524 [93 Cal.Rptr. 859, 483 P.2d 27] (confessing that this standard is vague, but emphasizing that a particular dissimilarity does not prevent the shedding of light on the value of the condemned property), and *City of Los Angeles v. Retlaw Enterprises, Inc.* (1976) 16 Cal.3d 473, 482 [128 Cal.Rptr. 436, 546 P.2d 1380] (*Retlaw*) (admission depends on whether sales price of other property can shed light on condemned property's value regardless of differences between them). After the trial court resolves this preliminary legal question, it is then ultimately for the jury to determine the extent to which the other property is in fact comparable. (*Retlaw, supra,* at p. 484 & fn. 6; *People ex rel. Dept. Pub. Wks. v. Reardon* (1971) 4 Cal.3d 507, 511–512 [93 Cal.Rptr. 852, 483 P.2d 20]; see Recommendation, *supra,* 3 Cal. Law Revision Com. Rep. at pp. A-50 to A-51.)

This whole "shedding light on value" standard is nothing more than a restatement of the general rule for the introduction of circumstantial evidence,[9] which is admissible if *relevant*, "i.e., if it can provide any rational inference in support of the issue" (3 Witkin, Cal. Evidence, *supra*, Presentation at Trial, § 138, p. 197).[10] And the reasonability of inferences has always been a question of law for the court. (*California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 44–45 [221 Cal.Rptr. 171].)

The comparable sales included in the House appraisal that involved orchard properties, while differing as expected in certain circumstances, cannot be said to be *incapable* of shedding light (in the form of a rational inference) on the value of the Foley land if converted to orchard use. While there might be arguments pro and con regarding the value of improvements not present on the Foley land, ultimately there do not appear to be insurmountable obstacles to a jury being able to derive a rational value of the comparable properties as bare land.

The County focuses on the prior use of several of the properties to grow row crops, all of which were converted to olive orchards after the sale. It points to House's deposition testimony that there is a higher value for a property with row crop use than the grazing use on the subject property, and the unsuitability of row crop use on the subject property. This, however, is a nonsequitur. The unsuitability of the subject property for the use of *row crops* does not prevent a rational inference about its value when used for *olive orchards*. In fact, that crop land was *converted* to olive orchards indicates that is an even more desirable use of the property.

In short, the proffered comparable sales did not present the risk of comparing apples with oranges (or high-density residential property with barren land). It was a comparison of a feasible use of the subject property with recent sales of property used for that purpose, with the differential for the costs of improvements either documented in university studies (the cost of establishing the orchards) or not impossible to determine (the other improvements). As a result, these other sales had *some* tendency in logic to prove the value of the subject property sufficient to make it a jury question, and consequently they are not subject to exclusion under section 816.

---

[9] Comparable sales belong to this species. (1 Witkin, Cal. Evidence, *supra*, Circumstantial Evidence, § 116, pp. 463–464.)

[10] As *Retlaw* puts it, the "transcendent requirement" under section 816 is relevance; it simply states this in a more "specific" manner, "namely, a capacity to shed light on an issue." (*Retlaw, supra*, 16 Cal.3d at p. 483, fn. 3.)

## DISPOSITION

The judgment is reversed and the matter remanded with the direction to issue a new order denying the County's motion in limine in its entirety. Foley shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Hull, Acting P. J., and Robie, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 10, 2013, S208647.