Filed 5/14/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CATHERINE Y. MCCOY, | B210953 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC346725) |
| v. | |
| PACIFIC MARITIME ASSOCIATION, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jane Johnson, Judge. Affirmed in part, reversed in part, and remanded with directions.

Martin & Martin, Areva D. Martin, Aram Kouyoumdjian, and Surisa E. Langbell for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Clifford D. Sethness, Robert Jon Hendricks, and Jason M. Steele for Defendants and Respondents.

_____

Appellant Catherine Y. McCoy appeals from the judgment of the trial court. She makes the following contentions: (1) the court erred in summarily adjudicating her sexual harassment and intentional infliction of emotional distress claims because the harassment was sufficiently pervasive and the emotional distress was purposeful and led to her emotional collapse; (2) the court erred in excluding evidence of harassment and discrimination, including racially derogatory remarks and sexually offensive conduct, which were relevant to her remaining retaliation claim; (3) the court misapplied governing law in granting judgment notwithstanding the verdict on her unlawful retaliation claim where the totality of the circumstances provided substantial evidence upon which the jury verdict in her favor should have been upheld; (4) the court erred in ruling that respondent Pacific Maritime Association (PMA) was not her employer because PMA exercised sufficient control over her employment to be considered her employer for purposes of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)[1]; and (5) the court improperly granted the motion for a new trial filed by respondents Yusen Terminals, Inc. (Yusen) and PMA (collectively respondents) because none of the five grounds upon which the court based its decision warranted a new trial.

We conclude: The court did not err in summarily adjudicating the sexual harassment and emotional distress claims, because the harassment was not so severe and pervasive as to alter the conditions of appellant's employment, and respondents' conduct failed to meet the extreme and outrageous standard necessary for the emotional distress claim; the court properly found respondent PMA was not appellant's employer as that term is used in FEHA; and the court did not abuse its discretion in granting a new trial. We also conclude that the court did not abuse its discretion in excluding evidence, except as to evidence of sufficiently similar retaliation by respondents against other employees. Finally, we conclude there was substantial evidence to support the jury verdict in

---

[1]     All further statutory references are to the Government Code unless otherwise indicated.

appellant's favor on the retaliation claim and thus the court erred in setting aside that verdict.

Respondents assert in their protective cross-appeal that the trial court erred in denying them partial judgment notwithstanding the verdict regarding the economic damages award because appellant failed to establish she was constructively discharged. We conclude a constructive discharge is not a prerequisite to an award of economic damages for discrimination under FEHA.

The judgment is affirmed in part, reversed in part, and remanded with directions.

## FACTUAL AND PROCEDURAL SUMMARY

PMA is a California nonprofit organization that serves as a bargaining agent for its membership, which includes various stevedore companies, steamship lines, and terminal operators. Yusen is a terminal operator in California and is a member company of PMA.

Appellant McCoy had been working as a marine clerk at the ports for more than a decade when, in 1998, she and others filed a federal lawsuit against respondents based on allegations of unlawful discrimination. The lawsuit led to a confidential settlement between appellant, respondents, and several other fellow employees. One provision of the settlement agreement provided appellant with "standard nightside vessel planner training." The vessel planner position offered a modest increase in compensation and held a higher place of prestige in the industry than the marine clerk position, due to the heightened skill involved.

Appellant's training to be a vessel planner began in December 2003. The practice at Yusen was for the current vessel planners to provide training to those seeking to become vessel planners. On appellant's first day, the marine operations manager at Yusen, Tracy Burdine, introduced her to vessel planners who would be training her going forward. She testified that none of them acknowledged her presence. Her assigned workspace was in a "less desirable" room off the main vessel planner area. The room was small and increased her isolation from the rest of the vessel planning staff.

Appellant presented evidence at trial indicating that she was denied a series of training materials during this period and was given substandard instruction. She claimed

this adverse treatment was based on her filing of the original federal lawsuit. She testified that she never received a copy of the vessel planner supplemental agreement (which detailed the duties of a vessel planner), a scope of work checklist, a computer manual or password, a vessel planner practice test, or any other formal training materials. Appellant also stated that she was denied access to a mock ship upon which she could hone her vessel planning skills.

Vessel planners at Yusen testified that vessel planner training does not involve formalized instructional materials, but rather is accomplished through on-the-job training. There also was testimony that the materials cited by appellant were almost all out of date and rarely used, and that available materials were given to appellant upon request. One vessel planner who trained appellant testified that no one ever had been given access to a mock ship and that, after a supervisor looked into it, the programmers at Yusen were unable to create one.

Appellant also was not told about a class being conducted on working with hazardous materials, in which another trainee was participating at the time. When appellant brought this up with Burdine, she was given access to the class. Another port employee, Cornell Mingo, testified that appellant was being shunned and isolated by the other employees. He stated that he saw other trainees receive much better treatment and more hands-on instruction. Mingo also said that only appellant was isolated in the smaller room adjacent to the main vessel planner room.

Appellant testified that she was harassed and shunned throughout her training period. Her complaints centered around one vessel planner in particular, Anthony Spanjol. Appellant testified that Spanjol would disrespect her by talking down to her and by putting his feet up on her work space. On one occasion, he yelled at her in front of other employees and called her stupid. One of appellant's supervisors, Marc Izzo, witnessed this incident, but left the room rather than address it. Appellant testified that when she complained about the incident she was told that she should go home and that Spanjol's behavior was just a part of his personality. She also stated that Spanjol often made racially derogatory remarks and engaged in sexually offensive behavior. He would

4

comment on the buttocks of other female employees once they left the room, using terms like "'nigger ass'" and "'J-Lo ass.'" On at least one occasion, Spanjol also made crude gestures toward a woman when the woman's back was turned. He also mocked these women in appellant's presence. During another incident, appellant asked Spanjol a question regarding the unloading of a ship, but he ignored her and "never spoke to [her] again." Appellant testified that shortly after this incident she decided she could no longer handle the work environment and quit her job entirely.

After having left her position as a marine clerk, appellant filed a grievance against Yusen. The arbitration hearing was presided over by the Southern California area arbitrator who was previously appointed jointly by the International Longshoremen's and Warehousemen's Union (ILWU), on behalf of the port employees, and PMA on behalf of its member employers, for such purposes. Appellant did not attend the hearing at the PMA office in Long Beach, California, although she had been notified of the date. Appellant asked the arbitrator to direct by subpoena a list of witnesses to appear before the arbitrator, and the arbitrator interviewed each of them in addition to receiving sworn testimony from five others involved in the relevant incidents. A written opinion was issued finding that no harassment or discrimination took place and concluding that the grievance was frivolous. The arbitrator imposed a temporary suspension on appellant. He ruled that she could return to work once she completed a diversity class and agreed to refrain from filing additional frivolous grievances.

Appellant filed a lawsuit against respondents and ILWU in January 2006. She brought claims for sexual harassment and retaliation in violation of FEHA, negligent supervision, hiring and retention, and intentional infliction of emotional distress. She dropped all claims against ILWU before trial.

After discovery, respondents moved for summary judgment or summary adjudication. The trial court granted summary adjudication of all claims except for the retaliation under section 12940, subdivision (h).

Prior to trial, each party filed motions in limine to exclude certain evidence. Respondents sought to exclude evidence regarding appellant's allegations of Spanjol's

racially derogatory remarks. Another motion in limine sought to exclude evidence regarding other allegations of discrimination or harassment by any current or former port employee. This included the exclusion of allegations that other employees who were parties to the confidential settlement had been retaliated against by respondents. A further motion in limine sought to exclude evidence related to the claims disposed of by summary adjudication. The trial court granted all three of these motions, and the case proceeded to trial.

Prior to closing argument, the trial court admonished both parties to follow the evidentiary limitations set by the court. The admonishment was triggered by repeated reference by appellant's attorney to the federal lawsuit, despite an explicit court order and an agreement of the parties not to discuss it. During closing argument, appellant's counsel also alluded to racial and gender-based motivations for the conduct of respondents, in violation of court order. Appellant's counsel then displayed to the jury the photo of a man whose head appeared to have been cut off, and told the jury the picture depicted what the respondents wanted to do to appellant. The trial court found that appellant's counsel willfully persisted in violating the rulings of the court, the agreement of the parties, and the rules of court.

After three days of deliberation, the jury returned a verdict for appellant, awarding her $660,000 in economic damages and $540,000 in emotional distress damages. Respondents filed joint motions for judgment notwithstanding the verdict, partial judgment notwithstanding the verdict on the economic damages award, and a new trial. PMA filed a separate motion for judgment notwithstanding the verdict on the basis that it was not appellant's employer as defined by FEHA.

The trial court granted PMA's motion for judgment notwithstanding the verdict because appellant had failed to provide sufficient evidence to prove PMA was her employer as required by FEHA. The court also granted the joint motion for judgment notwithstanding the verdict concluding there was not substantial evidence to support the jury verdict in appellant's favor. It denied the motion for partial judgment notwithstanding the verdict with respect to the economic damages, on the ground that

6

respondents' failed to cite relevant case authority. The trial court alternatively granted the motion for a new trial on five separate grounds: (1) irregularity in the proceedings; (2) surprise; (3) excessive damages; (4) insufficiency of the evidence; and (5) errors in law. (Code Civ. Proc., § 657, subds. (1), (3), (5)-(7).)

This appeal and protective cross-appeal followed.

## DISCUSSION

## I

Appellant contends the trial court erred in summarily adjudicating her claims of sexual harassment and intentional infliction of emotional distress in favor of respondents.

On appeal, we review the summary adjudication of claims de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) "We review the facts presented to the trial court and independently determine their effect as a matter of law." (*Transamerica Ins. Co. v. Superior Court* (1994) 29 Cal.App.4th 1705, 1713-1714.)

A.       *Sexual Harassment*

California law prohibits sexual harassment in the workplace. (§ 12940, subd. (j).) In order to prevail on such a claim, an employee "must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462.) Harassment that is "occasional, isolated, sporadic, or trivial" generally fails to meet this standard. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283.) There is both a subjective and objective component to this standard. (*Id*. at pp. 283-284.) "[A] plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail under the FEHA, if a reasonable person in the plaintiff's position, considering all the circumstances, would not share the same perception." (*Id*. at p. 284.)

A sexual harassment claim must be evaluated in light of the totality of the circumstances. This may include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'

7

[Citation.]" (*Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 462.) There is no requirement that a plaintiff alleging such conduct be the direct target of the harassment; however, "sexual conduct that involves or is aimed at persons other than the plaintiff is considered less offensive and severe than conduct that is directed at the plaintiff." (*Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th at pp. 284-285.) In such cases, it is necessary "to establish that the sexually harassing conduct *permeated* the plaintiff's direct work environment." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 610, italics added.)

Appellant points to evidence she argues was sufficient to withstand a motion for summary adjudication of the sexual harassment claim. She claimed that during the training period her coworkers made comments about other women who came into the vessel planners' office. This included comments about the women's bodies and once included their speculation as to who one of the women was in a sexual relationship with. On one of these occasions, Spanjol referred to one of the women as having a "J-Lo ass" or a "nigger ass." Spanjol also once ogled and made gestures toward one of the women when she had her back turned. Altogether appellant estimated that these comments regarding other women were made on approximately five to nine occasions.[2]

We conclude the factual allegations made by appellant were insufficient to support a sexual harassment claim under the hostile workplace theory. Over the four months she was working in the vessel planner's office, comments were made on, at most, nine, and possibly as few as five occasions. Although the details of most of the comments were vague, they involved discussion of other women's bodies outside their presence. Appellant did not claim any sexual comment or conduct was directed at her. Although

---

[2]     In her opening brief, appellant cites statements she made in a declaration submitted to the court in which she indicated that she was sexually harassed throughout the entire training period. However, the court sustained respondents' objection to all these statements based on their lack of foundation and contradiction of appellant's deposition testimony. Appellant does not challenge these evidentiary rulings on appeal. Therefore, they will not be considered as valid supporting evidence of her sexual harassment claim.

crude and offensive, these remarks were not so severe and pervasive as to alter the conditions of appellant's employment; the conduct did not create a work environment "permeated" with sexual harassment. (See *Fisher v. San Pedro Peninsula Hospital*, *supra*, 214 Cal.App.3d at p. 610.)

In addition, despite appellant's contention in her brief, Spanjol was not her supervisor, but rather a vessel planner charged with partial responsibility for training her. In order to be actionable, it must be shown that respondents knew, or should have known, of the alleged harassment and failed to take appropriate action. (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706-707; § 12940, subd. (j)(1).) Appellant admitted she never mentioned to anyone in management that Spanjol made these remarks about other women. Nor was there evidence that she ever mentioned anything about *sexual* harassment to management.

B.     *Intentional Infliction of Emotional Distress*

In order to be actionable as a claim for intentional infliction of emotional distress, a defendant's conduct must be extreme and outrageous. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 450, pp. 668-669.) The defendant must act with the intent to cause emotional distress or with reckless disregard of the likelihood of such an outcome. (*Hughes*, at p. 1050.) Further, the conduct must be the actual and proximate cause of the plaintiff suffering severe emotional distress. (*Ibid.*) To be "outrageous," the conduct must go "beyond all bounds of decency; ordinary rude or insulting behavior is not enough . . . ." (5 Witkin, *supra*, § 451 at p. 669.)

Appellant contends her valid claim of sexual harassment alone warrants reversal of the summary adjudication of the intentional infliction of emotional distress claim. While a claim of sexual harassment may establish the outrageous conduct element for an intentional infliction of emotional distress claim, our affirmance of the trial court's summary adjudication of appellant's sexual harassment claim makes this argument moot. (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1051.)

9

Appellant also argues the evidence underlying her retaliation claim is sufficient to meet the conduct element of her intentional infliction of emotional distress claim. As we shall discuss, we conclude there was substantial evidence to support the jury's finding that respondents engaged in unlawful retaliation. Nevertheless, appellant's argument fails as to the intentional infliction claim. A "series of subtle, yet damaging, injuries" is sufficient to constitute retaliation; however, it does not necessarily rise to the "extreme and outrageous" standard required for an intentional infliction of emotional distress claim. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1055 (*Yanowitz*); *Hughes v. Pair*, *supra*, 46 Cal.4th at pp. 1050-1051.) Although appellant claimed she was faced with continued isolation and ostracism, we conclude respondents' conduct did not go "beyond all bounds of decency." (5 Witkin, Summary of Cal. Law, *supra*, § 451, p. 669.)

We find no error in the trial court's grant of summary adjudication on the sexual harassment and intentional infliction of emotional distress claims in favor of respondents.

## II

Appellant contends the trial court erred in excluding evidence of racially derogatory remarks and sexually offensive conduct, depriving her of supporting evidence on her claim of retaliation. In addition, she claims the court erred in finding the evidence regarding discrimination of other employees not relevant and therefore inadmissible under Evidence Code section 350.

The trial court enjoys "broad authority" over the admission and exclusion of evidence. (3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 55, pp. 104-105.) We review a trial court's ruling on a motion in limine to exclude evidence for an abuse of discretion. (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1493; *County of Glenn v. Foley* (2012) 212 Cal.App.4th 393, 398.) The trial court's authority is particularly broad "with respect to rulings that turn on the relevance of the proffered evidence." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) Furthermore, "[i]t is for the trial court, in its discretion, to determine whether the probative value of relevant evidence is outweighed by a substantial danger of undue prejudice. The appellate court may not interfere with the trial court's

10

determination . . . unless the trial court's determination was beyond the bounds of reason and resulted in a manifest miscarriage of justice." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 596.)

Appellant argues the court should have admitted evidence regarding derogatory remarks made by Spanjol and evidence of the sexual harassment and discrimination faced by other female employees at the terminal.

The trial court granted respondents' motion in limine to exclude evidence concerning Spanjol's comments, which referred to other women's buttocks in racial terms and mocked the vernacular of other African-American employees. In granting another of respondents' motions in limine, the court also excluded evidence regarding harassment and discrimination against other female employees. The court found much of this evidence irrelevant to the sole remaining cause of action, unlawful retaliation, and also found it excludable under Evidence Code section 352 as unduly prejudicial and likely to lead to confusion of the issues.

Appellant argues the evidence was relevant to prove the level of hostility in her work environment, supporting her claim that respondents were retaliating against her. However, the evidentiary ruling does not go so far as to preclude any evidence regarding the working environment and specifically the role Spanjol played in creating that environment. The trial court made it clear that evidence that Spanjol and other employees screamed at her, ignored her, shunned her, excluded her and gave her confusing or inadequate instruction, was admissible. However, it stated that evidence of stray comments made about other women employed at Yusen would be excluded under Evidence Code section 352 because "it leaves the impression that this is a sexual harassment case." The trial court additionally pointed out that the comments were made by a nonparty, nonsupervisory employee, further undermining its probative value. We find that the court's decision to exclude such comments was within its authority and that it did not result in a miscarriage of justice.

The trial court also excluded evidence that other women were harassed or discriminated against, on the basis that such evidence was not relevant under Evidence

11

Code section 350 as to appellant's unlawful retaliation claim. Generally, the relevance of evidence of discrimination or harassment by defendants against nonparties is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." (*Sprint/United Mgmt. Co. v. Mendelsohn* (2008) 552 U.S. 379, 388; see also *Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 767; *Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 113-115.) We conclude the court was within its discretion to find evidence of discrimination and harassment based on race and gender had little relation to the surviving retaliation claim, and was excludable on that ground.

The record indicates there may have been evidence regarding retaliation against two other female employees similarly situated to appellant. Appellant argues respondents retaliated against her and these other women for filing the original federal lawsuit, the protected activity under her current retaliation claim. These employees also were granted the opportunity to train as vessel planners with respondents as part of the settlement agreement. Because intent is an element in an unlawful retaliation claim, evidence that a defendant intentionally retaliated against other employees for the same conduct engaged in by the plaintiff would be relevant. (*Sprint/United Mgmt. Co. v. Mendelsohn*, *supra*, 552 U.S. at p. 388; *Johnson v. United Cerebral Palsy/Spastic Children's Foundation*, *supra*, 173 Cal.App.4th at pp. 760, 767; *Pantoja v. Anton*, *supra*, 198 Cal.App.4th at pp. 114-115.) Appellant asserted at the evidentiary hearing that these two other women were in "the exact same situation" as she and urged the court to allow the evidence "only to the extent . . . that [it] relates to the retaliatory conduct" in order to prove the necessary element of intent.

The court did not base its decision to exclude this evidence of similar retaliation on its prejudicial nature under Evidence Code section 352. Rather, the court ruled that evidence of retaliation against these other employees was irrelevant to appellant's own retaliation claim. Although the exclusion of evidence and argument regarding the underlying factual allegations in the federal lawsuit leading to the settlement was mutually agreed to, if these other employees faced similar retaliation to that alleged by

12

appellant when seeking training, it cannot be said that such evidence could be of no relevance to appellant's retaliation claim. If this "me-too evidence" was probative of respondents' intent in retaliating against appellant, as alleged, it should have been admitted under Evidence Code section 350. (*Pantoja v. Anton*, *supra*, 198 Cal.App.4th at p. 115.) However, determining whether such claims are sufficiently similar to constitute relevant evidence is inherently fact-intensive. (*Sprint/United Mgmt. Co. v. Mendelsohn*, *supra*, 552 U.S. at p. 388.) Because of the possible relevance of such evidence, the court should have, at the very least, conducted a hearing to ascertain the details of the evidence and the similarity to appellant's claims before subjecting it to a blanket exclusion. We find the record before us does not provide sufficient details of the evidence being excluded for us to make such a determination on our own.

As we shall discuss, this case is being remanded for retrial. The trial court shall reconsider the evidence regarding retaliation against other employees consistent with our opinion, and determine whether such evidence presents factual scenarios involving other employees that are "sufficiently similar" to those presented by appellant in her retaliation claim. (See *Johnson v. United Cerebral Palsy/Spastic Children's Foundation*, *supra*, 173 Cal.App.4th at p. 767.) With this exception, the trial court's evidentiary rulings are affirmed.

### III

Appellant contends there is substantial evidence in the record to support the jury verdict in her favor. Although she did not assert a constructive discharge theory, appellant contends the evidence supported a finding that the action taken by respondents materially affected the terms and conditions of her employment amounting to an adverse employment action, as required by FEHA.[3] As a result, she argues the trial court ruling granting the motion for judgment notwithstanding the verdict should be reversed. Appellant specifically contends the court failed to properly apply the "totality of the circumstances" test required for retaliation claims.

---

[3] In a hearing on the posttrial motions, appellant explicitly stated to the court that she "never had a constructive discharge claim."

Appellant brought her claim for retaliation under section 12940, subdivision (h), of FEHA. In order to establish a prima facie case of retaliation under that statute, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) If a prima facie case is established, the employer is required to offer a legitimate, nonretaliatory basis for the adverse employment action in order to shift the burden back to the plaintiff, who must then prove intentional retaliation. (*Ibid*.)

In order to meet the FEHA standard, an employer's adverse treatment must "materially affect the terms, conditions, or privileges of employment." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.) "[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Ibid*.) Such a determination "is not, by its nature, susceptible to a mathematically precise test." (*Id*. at p. 1054.) "Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of sections 12940(a) and 12940(h)." (*Id*. at pp. 1054-1055.) FEHA not only protects against "ultimate employment actions such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement . . . ." (*Id*. at p. 1054.) Actionable retaliation need not be carried out in "one swift blow," but rather may be "a series of subtle, yet damaging, injuries." (*Id*. at p. 1055.) Thus, each alleged retaliatory act need not constitute an adverse employment action in and of itself, and the totality of the circumstances must be considered. (*Id*. at pp. 1036, 1055.)

14

In contrast to ruling on a motion for new trial, ruling on a defendant's motion for judgment notwithstanding the verdict, the trial court may not weigh the evidence or judge the credibility of witnesses. (*Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 703 (*Stubblefield*).) All reasonable inferences must be drawn in favor of the plaintiff and conflicting evidence is to be disregarded. (*Ibid*.) "A party is entitled to judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the evidence compels a judgment for the moving party as a matter of law." (*Paykar Construction, Inc. v. Spilat Construction Corp.* (2001) 92 Cal.App.4th 488, 493.) On review, we apply the substantial evidence test to the jury's verdict, ignoring the judgment of the court and reading the record in the light most advantageous to the plaintiff. (*Stubblefield*, at p. 703; *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 227.) Actions for retaliation are "inherently fact-driven"; it is the jury, not the court, that is charged with determining the facts. (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 389.)

Appellant contends there was substantial evidence in this case from which the jury could reasonably conclude that she was unlawfully retaliated against, and, therefore, the court erred in granting judgment notwithstanding the verdict. We agree.

The jury heard testimony detailing how management at Yusen exposed details of the *confidential* settlement agreement to appellant's supervisor and the vessel planners on the nightside shift. Appellant testified that she was subjected to harassment from the vessel planners, upon whom she relied for the training necessary to advance. She detailed how her requests for assistance were ignored, the abusive language to which she was subjected, and the failure of her supervisor to intervene despite witnessing this abuse and being told about its effect on appellant. Mingo, a dockworker for over 20 years who visited the vessel planner office numerous times, testified that appellant was being "hard-timed" and received substandard training as compared to other trainees he observed. Appellant's psychologist, Nina Rodd, testified, with "reasonable psychological

15

certainty,"[4] that appellant suffered from "major depressive disorder and generalized anxiety due to systematic and regular exposure to the hostile environment that she was in, where she was pushed away, discriminated against, and treated with hostility."

Although respondents introduced evidence to dispute much of appellant's testimony regarding various training materials denied to her, when reviewing the jury's verdict, we disregard such evidence. (*Stubblefield*, *supra*, 32 Cal.App.4th at p. 703.) The testimony presented by appellant that the management at Yusen revealed the circumstances surrounding her arrival in the vessel planner unit to the vessel planners had to be considered in the workplace context of the claim. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.) The factfinder needed to consider the unique circumstances of respondents' conduct. (*Ibid*.) Here, appellant relied on these vessel planners for instruction and their cooperation was necessary to her successful training. The jury could infer respondents revealed the information with the intent to turn the vessel planners against appellant, knowing this would likely make her training period intolerable. After hearing all the testimony and weighing the evidence presented on the issue, the jury could have concluded that management's actions were specifically carried out in retaliation against appellant for having brought the initial lawsuit. It also could have credited the testimony of the psychologist, which indicated appellant's work environment caused her severe emotional trauma, undermining her ability to complete the training or return to work. The jury could have found this emotional toll from respondents' actions amounted to a material alteration of the conditions of her employment. (*Ibid*.) If these inferences and conclusions were drawn by the jury, such an intentional, adverse action taken by respondents in response to appellant's protected activity and causing such emotional distress could constitute unlawful retaliation. A judgment can be supported by inference so long as it is a reasonable conclusion from the evidence presented; it is the jury's duty to determine the facts. (*McRae v. Department of Corrections & Rehabilitation*, *supra*,

---

[4]    This and similar phraseology may not be accurate and is problematic. (See Rest.3d Torts, § 28, com. e, p. 416.)

16

142 Cal.App.4th at pp. 389-390.)  We conclude the inferences and conclusions implicitly drawn by the jury were supported by the record, and not "'rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men.'"  (*Id*. at p. 389.)

Although appellant does not argue she was constructively discharged, such a claim is not necessary to find unlawful retaliation.  (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1053-1054.)  The question whether the evidence of harassment and hostility in her workplace was sufficient to support the conclusion that it was "reasonably likely to impair a reasonable employee's job performance" was put before the jury.  (*Id*. at pp. 1054-1055; see also *id*. at p.1056, fn. 16.)  Because we accept as true the evidence supporting the jury's findings, we find the court's conclusion that respondents did not retaliate against appellant is not, as a matter of law, the only conclusion legally deducible from the evidence; therefore, the court would not have been justified in taking the case away from the jury.  (See *Spillman v. City etc. of San Francisco* (1967) 252 Cal.App.2d 782, 786.)  Neither was it justified in granting judgment notwithstanding the verdict on this ground.  Even if contradicted, there was substantial evidence supporting the jury's conclusion that respondents unlawfully retaliated against appellant for engaging in protected activity and that the retaliation resulted in a material alteration of the terms, conditions, or privileges of appellant's employment.  (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.)   We reverse the trial court's entry of judgment notwithstanding the verdict.

## IV

Appellant also contends the court erred in granting judgment notwithstanding the verdict in favor of PMA on the ground there was insufficient evidence to prove that PMA was her employer.[5]

---

[5]    Appellant also argues the partial judgment notwithstanding the verdict should be reversed because PMA waived its right to contest its employer status.  However, an essential element of appellant's retaliation claim was that the alleged perpetrators were her "employers," and thus she carried the burden of proving each respondent qualified as such. (§ 12940, subd. (h).)

17

The "fundamental foundation for liability" under FEHA is the "'existence of an employment relationship'" between the parties, even if indirect. (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 123, italics omitted.) An assessment of whether such an employment relationship exists requires a consideration of the totality of the circumstances. (*Id*. at p. 124.) Factors to be considered are the payment of salary or other benefits, the ownership of the equipment used by the employee, the location where the relevant work is performed, the responsibility of the employer to train the employee, the authority to promote or discharge the employee, and the power to determine the schedule, assignment, and amount of compensation earned by the employee. (*Id*. at p. 125.) Although there is "'no magic formula'" and no one dispositive factor, the most important consideration is the right of the employer "'to control the means and manner of the workers' performance.'" (*Id*. at pp. 124-125, 126.) That control must be significant in order to hold the alleged employer responsible, especially when the conduct underlying the claim was committed indirectly, by an immediate employer other than the defendant. (*Id*. at p. 126.)

While we review an order granting judgment notwithstanding the verdict based on insufficiency of the evidence under the substantial evidence standard, if the motion presents a legal question based on undisputed facts we review the ruling de novo. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1043-1044.)

Appellant relies on evidence that PMA negotiated labor contracts and the collective bargaining agreement between ILWU and the member terminal companies; PMA signed the vessel planner supplemental agreement; it paid for the arbitrator who suspended her; and it reimburses the terminal operator for the cost of training vessel planners. We conclude, as a matter of law, this evidence is insufficient to establish PMA was her employer as that term is used in FEHA.

There was uncontradicted testimony that Yusen employed her, managed the site where the retaliation took place, and supervised and employed those individuals responsible for the retaliatory acts. Under the widely accepted control test, PMA had very little if any control over appellant or her workplace. It was Yusen that paid her

18

salary, owned the equipment she worked on, controlled the location where she worked and where the retaliation took place, was responsible for her training, had the right to promote or discharge her and was the only party to supervise her work. There is no evidence that PMA participated in any of these functions.

Based on the similar objectives and wording of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (hereafter Title VII), courts often look to reasoning employed by federal courts when interpreting FEHA. (*Vernon v. State of California*, *supra*, 116 Cal.App.4th at p. 124, fn. 6.) In *Anderson v. Pacific Maritime Association* (9th Cir. 2003) 336 F.3d 924 (*Anderson*), the Court of Appeal considered whether PMA was the employer of a group of plaintiff longshoremen. The court found it was PMA's member-companies, not PMA itself, that were the employers of those working the ports, and thus the ones responsible for workplace discrimination. It reasoned "the hostile work environment did not occur at any facility controlled by PMA, but instead at the docks and waterfront facilities controlled by the member-employers that actually employ and supervise [the dock workers] and their putative harassers on the job site." (*Id*. at p. 931.) *Anderson* supports the conclusion that PMA cannot be held liable as an employer for the retaliation by Yusen against appellant.

The judgment notwithstanding the verdict in favor of PMA is affirmed.

## V

Appellant contends the trial court erred in granting respondents' motion for a new trial, on five separate grounds.

Code of Civil Procedure section 657 provides seven bases on which a trial court may grant a motion for a new trial. When the court properly identifies its basis for granting a new trial, "the appropriate standard of judicial review is one that defers to the trial court's resolution of conflicts in the evidence and inquires only whether the court's decision was an abuse of discretion." (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 636.) The court's order is affirmed if it should have been granted upon *any* ground stated by the court. (Code Civ. Proc., § 657.) "The determination of a motion for a new trial rests so completely within the court's discretion that its action will

19

not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial . . . . So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside." (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387.) The reason for this high level of deference is the trial court is much closer to the evidence than a reviewing court and sits as a trier of fact independent of the jury. (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412.) "Therefore, the trial court's factual determinations, reflected in its decision to grant the new trial, are entitled to the same deference that an appellate court would ordinarily accord a jury's factual determinations." (*Ibid.*) We now examine the reasons set forth by the court for granting the motion for a new trial.

A. *Irregularity in the Proceedings*

A jury's verdict may be vacated and a new trial ordered based on "[i]rregularity in the proceedings of the court, jury or adverse party." (Code Civ. Proc., § 657, subd. (1).) Misconduct of counsel can amount to an irregularity and thus can be a ground for a new trial. (*Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1122.) However, it must be "reasonably probable that the party moving for a new trial would have obtained a more favorable result absent the misconduct" in order to justify a new trial. (*Ibid.*)

The trial court found appellant's counsel at trial engaged in misconduct when he presented "a host of improper arguments" and a provocative photo to the jury in closing argument. The court cited appellant's many violations at trial of its rulings on the motions in limine regarding evidence of race and gender discrimination and the details of the previous federal litigation. The court stated it had warned appellant numerous times and even admonished the parties on the record just prior to closing argument about these rulings and the evidence that was not to be referenced. Appellant then proceeded to cite that very evidence in closing argument and, compounding the misconduct, introduced a "highly inflammatory photo" which was not admitted as evidence or presented to opposing counsel. Based on this conduct, the court found that appellant, through her

20

attorney, "affirmatively chose to ignore court orders" and made a "blatant attempt to inject race and gender into a case which was a retaliation, not a race or gender discrimination, case." It concluded this misconduct resulted in a miscarriage of justice and was sufficient to constitute irregularity in the proceedings, justifying a new trial under Code of Civil Procedure section 657, subdivision (1).

Appellant argues there was no evidence the conduct of her counsel at trial affected the outcome of the case, and therefore it did not justify granting a new trial.

The record reveals appellant was specifically directed not to discuss certain evidence, but then immediately proceeded to cite that evidence in closing argument to the jury in flagrant disobedience of the court's orders. Appellant's closing argument implied, many times, that race and gender played a role in respondents' conduct toward appellant. In addition, appellant's attorney began the rebuttal argument by flashing a photo of a decapitated man to the jury, suggesting that the image captured what respondents wanted to do to appellant. Because appellant did not show the photograph to opposing counsel prior to its use, its introduction was in violation of former Superior Court of Los Angeles County, Local Rules, rule 8.74, in effect at the time of trial.[6] The first question from the jury during deliberations was: "How many black women have been vessel planners[?]" This provides support for the court's conclusion that appellant's improper references to race had an impact on the jury.

The court's finding that this misconduct resulted in a miscarriage of justice is given great deference. The trial court sat much closer to the alleged misconduct and could more closely monitor its possible effect on the jury. The court, acting as a "'thirteenth juror'" in this case, felt the misconduct was severe enough that it likely affected the outcome for respondents. (See *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1689.) Considering the wide discretion accorded to a trial court in

---

[6]     Former Superior Court of Los Angeles County, Local Rules, rule 8.74, in effect at the time of trial, has been retitled as rule 3.180. It provides: "A graphic device . . . which is not in evidence and is to be used for illustration only in argument must be shown to opposing counsel before commencement of the argument."

ruling on a new trial motion, we find the trial court's order granting a new trial based on irregularity in the proceedings was not a "manifest and unmistakable abuse of discretion." (*Jiminez v. Sears, Roebuck & Co.*, *supra*, 4 Cal.3d at p. 387.) We therefore defer to the court's conclusion that it was "reasonably probable that [respondents] would have obtained a more favorable result absent the misconduct." (*Bell v. Bayerische Motoren Werke Aktiengesellschaft*, *supra*, 181 Cal.App.4th at p. 1122.)

B.    *Surprise*

A trial court may order a new trial based on surprise. (Code Civ. Proc., § 657, subd. (3).) The surprise must have detrimentally impacted the party moving for a new trial, but the movant must not have been able to prevent or guard against it by ordinary prudence. (*Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1806.)

Appellant argues that introduction of the photo during closing argument failed to affect the outcome of the case and was insufficient to constitute surprise as a ground for a new trial order.

The court found the photo introduced by appellant was "highly inflammatory," and would have been excluded under Evidence Code section 352 because of its prejudicial effect had appellant not failed to seek permission before presenting it. In fact, the court found appellant's counsel "made a conscious decision not to comply with [former Superior Court of Los Angeles County, Local Rules, rule 8.74] because he knew that the court would deny him the right to show [the photograph] to the jury." The court concluded that revealing the "shocking photo" to the jury was "clearly detrimental" to respondents and had a "material adverse effect" on them. The court stated respondents could not have guarded against this effect, especially when considering appellant's counsel's repeated violations of court orders and admonitions.

As we have discussed, failure of appellant's counsel to show the photograph to opposing counsel before presenting it to the jury violated the Local Rules of the Los Angeles Superior Court. The court's order indicates the photograph shows a man with his head cut off. The determination of whether this constituted surprise as understood in

22

Code of Civil Procedure section 657 relies heavily on actually witnessing its presentation to the jury. In such situations, "[e]ven the most comprehensive study of a trial court record cannot replace the immediacy of being present at the trial, watching and hearing as the evidence unfolds." (*Lane v. Hughes Aircraft Co.*, *supra*, 22 Cal.4th at p. 412.) We conclude the order granting respondents' motion for a new trial based on surprise was not a manifest abuse of discretion. The conduct of appellant's counsel in violating the rules of the court and offering such an inflammatory photograph is sufficient evidence to support the court's conclusion that it was prejudicial to respondents.

### C. *Excessive Damages*

A jury's verdict also may be set aside and a new trial ordered when it awards excessive damages. (Code Civ. Proc., § 657, subd. (5).) "As a general rule, when a motion for new trial is granted on the ground of excessive damages . . . the order will not be reversed unless it plainly appears the court has abused its discretion . . . ." (*Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 547.)

Because appellant opted not to argue a constructive discharge theory, both counsel and the court agreed that her economic damages award would be "limited to the difference between the earnings of a marine clerk and the earnings of a vessel planner." Appellant's own attorney reiterated to the jury that it could only award the difference between the two salaries. After the jury's questions to the court expressed confusion regarding damages, the court, with agreement by all parties, clarified to the jury that the difference between the two salaries was five percent and the evidence indicated the yearly salary of a marine clerk was $160,000. The difference between the salaries of a marine clerk and a vessel planner would have been $8,000 annually. The jury awarded appellant $660,000 in economic damages. As the court pointed out in its order, this would have required appellant to have worked for over 88 years. The court found this award was "clearly excessive" and a "result of the application of the wrong standard" or passion or prejudice. Based on the math before us, it does not appear the court has abused its discretion. Appellant's main argument is the court should have rectified the error through remittitur rather than awarding a new trial. This would have been the

23

proper remedy if it was the sole basis for the granting of a new trial. However, excessive damages was not the only ground upon which the trial court granted the motion nor the only ground upon which we affirm. Therefore, remittitur was not and is not an appropriate method of dealing with the improper damages award.

The court's order granting a new trial on these three grounds is affirmed. Since we must affirm an order granting a new trial "if it should have been granted upon any ground stated in the motion" and identified by the court, we need not address appellant's additional challenges to the court's new trial order on the grounds of insufficient evidence and error in law. (Code Civ. Proc., § 657; see also *Maher v. Saad* (2000) 82 Cal.App.4th 1317, 1327.)

## VI

Respondents cross-appeal the trial court's denial of a partial judgment notwithstanding the verdict as to economic damages. Respondents ask us to reverse so as to clarify for the court upon retrial that appellant has no claim for economic damages. Respondents argue appellant's failure to establish a constructive discharge precluded her from recovering any economic damages.

Respondents rely almost exclusively on federal law for this proposition. The trial court denied the motion for partial judgment notwithstanding the verdict on economic damages, concluding that respondent failed to cite statutory or case law authority for the position that a constructive discharge was a prerequisite to recovery of economic damages. Many federal courts have ruled that a constructive discharge is a prerequisite when determining whether a plaintiff is entitled to economic damages. (See *Sanchez v. City of Santa Ana* (9th Cir. 1990) 915 F.2d 424, 431; *Betts v. Costco Wholesale Corp.* (6th Cir. 2009) 558 F.3d 461, 475; *Spencer v. Wal-Mart Stores, Inc.* (3d Cir. 2006) 469 F.3d 311, 317; *Mallinson-Montague v. Pocrnick* (10th Cir. 2000) 224 F.3d 1224, 1236.) The federal cases applying this approach have dealt with employment discrimination claims under Title VII rather than FEHA. As we have discussed, California courts look to federal court interpretations of Title VII as a guide to interpreting FEHA provisions. Nevertheless, this is limited to cases where the relevant provisions of each statute are

24

sufficiently similar. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 74.) When there are significant differences between

federal law and FEHA, the persuasiveness and weight of federal precedents are weakened. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040.)

Here we deal with the issue of what damages are recoverable in an employee's suit alleging a violation of FEHA. While FEHA indicates individual suits for damages are permitted to enforce its provisions, it does not specify what damages are recoverable. (§ 12965, subds. (b)-(c); *State Dept. of Health Services v. Superior Court*, *supra*, 31 Cal.4th at p. 1042.) Title VII, on the other hand, expressly describes the remedies a court may assess in such actions. (*Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 217.) "FEHA does not limit the relief a court may grant in a statutory suit charging employment discrimination." (*Id.* at p. 215.) An analysis of the two reveals that "FEHA offers greater protection and relief to employees than does Title VII." (*Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 842.) Thus, federal precedents are of diminished value in determining whether economic damages are recoverable by appellant in the case at hand.[7]

We addressed this issue in *Cloud v. Casey* (1999) 76 Cal.App.4th 895. There the plaintiff resigned after being denied a promotion based on gender discrimination. (*Id.* at p. 900.) After upholding the trial court's summary adjudication of a constructive discharge claim, we found the court erred in refusing to allow the plaintiff's claims for economic damages. (*Id.* at p. 909.) In doing so, we rejected the defendant's argument, asserted here by respondents, that the federal precedents compelled the preclusion of economic damages in the absence of a constructive discharge. We reasoned such a

---

[7] Respondents also cite federal precedent for the theory that appellant was not entitled to economic damages under FEHA because she was not objectively qualified for the vessel planner position. The cases cited by respondents address the requirements for establishing a prima facie case of discriminatory hiring or failure to promote. Thus, they are not analagous to the context of what damages are awardable in a successful claim for unlawful retaliation.

narrow limitation on what damages were recoverable was in disharmony with the underlying statutory objective of FEHA, which is "to make the victim of discrimination whole." (*Ibid.*)

We conclude economic damages are awardable to appellant despite the absence of a constructive discharge. FEHA does not limit damages and "all forms of relief granted to civil litigants generally . . . are available . . ." regardless of whether the party aggrieved was constructively discharged. (*Commodore Home Systems, Inc. v. Superior Court*, *supra*, 32 Cal.3d at p. 215.) We affirm the trial court's denial of the motion for partial judgment notwithstanding the verdict on the issue of economic damages. The claim may again be brought upon retrial. The finder of fact will then be able to determine whether unlawful retaliation took place and if so, what level of damages were suffered by appellant as a result.

## DISPOSITION

We affirm the court's summary adjudication of the sexual harassment and intentional infliction of emotional distress claims. The award of judgment notwithstanding the verdict in favor of PMA is affirmed. However, the trial court's granting of judgment notwithstanding the verdict on appellant's retaliation claim is reversed. We also reverse the court's exclusion of the evidence of retaliation by respondent Yusen against other employees and direct it to reconsider the evidence in accord with this opinion. We affirm the court's exclusion of the remaining evidence included in respondents' motions in limine.

The court's granting of a new trial is upheld on the grounds of irregularity in the proceedings, surprise and excessive damages. In all other respects, the judgment of the court is affirmed. The case is remanded to the trial court for retrial consistent with this

opinion.  PMA is to have its costs on appeal.  Appellant and Yusen are to bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION.**


EPSTEIN, P. J.


We concur:


WILLHITE, J.


SUZUKAWA, J.