Filed 10/16/13  Velasquez v. County of Ventura CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROBERT VELASQUEZ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF VENTURA,<br><br>    Defendant and Appellant. | 2d Civil No. B238939<br>(Case No. VEN00335343)<br>(Santa Barbara County) |

Plaintiff Robert Velasquez (Velasquez) sued the County of Ventura (County) for wrongful constructive termination and for retaliating against him for reporting alleged discrimination within the County's Bureau of Investigation (Bureau) where he worked.  The jury found for Velasquez, and awarded him $1.356 million in damages.  The County challenges the sufficiency of the evidence supporting these verdicts.  We affirm.

### FACTS

Because this is a substantial evidence appeal, we summarize the facts in the light most favorable to the judgment below.  (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 299 (*McCoy*).)

Velasquez worked as a sworn peace officer and investigator in the

Bureau, a branch of the County's district attorney's office, from 1987 until he resigned in December 2009. He began as an investigator, was promoted to senior investigator in 1992, and by 2004 was solely managing different investigatory units within the Bureau. In his performance evaluations between 2000 and 2006, Velasquez consistently received high marks as an investigator; lower marks as an administrator, due to late reports and inadequate communication with his supervisors; and an overall rating of "generally exceeds the standard" (a "4" on a scale of "1" to "5").

In April 2008, Velasquez testified in a deposition for a gender discrimination lawsuit brought against the County by one of his coworkers, Tammy Schweitzer (Schweitzer). His testimony recounted incidents of discrimination by Bureau supervisors against himself and others, and was generally critical of the Bureau.

In the summer of 2008, Velasquez received his performance evaluation for 2006 through 2008. For the first time, his overall rating dropped to "meets the standard" ("3" on the scale).

In September 2008, the Bureau opened an internal investigation on Velasquez. Velasquez was at the time supervising the High Tech Task Force (Task Force). The Task Force used personnel from the Bureau and the Ventura County Sheriff's Department, as well as civilians, to conduct forensic analyses of computers seized by various law enforcement agencies. When Velasquez's immediate supervisor, Vince Gilliam (Gilliam), asked to see a forensic report for computers seized from the Hells Angels by the Sheriff's department, Velasquez thought the request to be "unethical or improper." Rather than clarify the reason for the request with Gilliam or Gilliam's supervisor in the Bureau, Velasquez told one of the Sheriff's department commanders about Gilliam's request. This caused interagency friction, and Velasquez was ultimately given a written reprimand for handling the situation poorly.

In October 2008, Velasquez was transferred from the Task Force to

the government fraud unit as part of a Bureau-wide reorganization that moved more than half of the Bureau's investigators. The government fraud unit was usually supervised by newly promoted senior investigators. Velasquez's supervisors gave him inconsistent explanations as to why he, a seasoned senior investigator, was reassigned to manage that unit.

In December 2008, Velasquez gave another coworker, Leslie Robertson (Robertson), a copy of his handwritten notes from a December 2007 personnel meeting among Bureau supervisors. At that meeting, Robertson was being considered for promotion. The notes identified Michael McKendry (McKendry) as commenting that she was a "loner." Given that Robertson had declined to date McKendry seven years before, Velasquez viewed McKendry's comment as reflecting gender discrimination. Robertson filed a gender discrimination lawsuit against the County soon thereafter.

In January 2009, Velasquez sued the County under the Fair Employment and Housing Act (FEHA) for discrimination and harassment on the basis of national origin and ancestry, and for not preventing that discrimination.

In July 2009, one of the Bureau's two deputy chief positions was about to be vacated. Velasquez had applied, and not been selected, for that position in 2003 and 2006. Before posting the opening, Bureau management added a new question asking applicants to comment on their "current professional relationship with Bureau management." Because the County had issued its written reprimand just two months earlier, Velasquez viewed the new question as signaling that he need not apply for the position. Velasquez did not apply, partly because of that question.

In September 2009, the Bureau opened a second internal investigation of Velasquez for breaching the confidentiality of the December 2007 personnel meeting by disclosing his notes to Robertson. Before he was interviewed as part of this investigation, his supervisor—who was the lead investigator—reported in Velasquez's 2009 performance evaluation that Velasquez had improperly disclosed

3

that confidential information.  During his December 2, 2009, interview for the internal investigation, the lead investigator refused to recuse himself.

Feeling that the outcome of the second internal investigation was a foregone conclusion and that he would be fired, Velasquez informed his supervisors in a December 2, 2009, letter that the investigation was "causing [him] grievous distress and interfering with his ability to do his job."  Nine days later, he resigned.

*PROCEDURAL HISTORY*

Three months after he resigned, Velasquez amended his complaint to add claims for (1) retaliation for opposing practices forbidden by the FEHA and for filing a FEHA complaint himself (Gov. Code, § 12940, subd. (h))[1]; and (2) wrongful constructive termination.

The County successfully moved for summary adjudication on the national origin and ancestry claims in the original complaint.  Its motion for summary judgment on the retaliation and wrongful constructive termination claims was denied.

The case proceeded to trial.  The trial court denied the County's nonsuit motion at the close of Velasquez's case-in-chief, and its motion for a directed verdict at the close of evidence.  The jury returned verdicts for Velasquez, and awarded $1.356 million in damages.  The court further awarded costs of $21,326; expert fees of $8,800; and attorney's fees of $325,000.  The court denied the County's motions for judgment notwithstanding the verdict and for a new trial.

*DISCUSSION*

In evaluating the County's sufficiency of the evidence challenge, we review the entire record in the light most favorable to the judgment below, resolving all conflicts in the evidence and drawing all reasonable inferences to support the verdict.  We may not reweigh the evidence or substitute our credibility determinations for those made by the jury.  (*Steele v. Youthful Offender Parole Bd.*

---

[1] Unless otherwise indicated, all statutory references are to the Government Code.

4

(2008) 162 Cal.App.4th 1241, 1251-1252 (*Steele*).) We cannot affirm unless "'. . . there is no substantial evidence to support the verdict and the evidence compels a judgment for [the County] as a matter of law.'" (*McCoy*, *supra*, 216 Cal.App.4th at p. 299, quoting *Paykar Constr., Inc. v. Spilat Const. Corp.* (2001) 92 Cal.App.4th 488, 493.) "Substantial evidence" is more than a "'mere scintilla.'" (*Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 639.)

*Retaliation*

To prove retaliation under FEHA, Velasquez was required to prove that "(1) he . . . engaged in a 'protected activity,'" (2) the County subjected [him] to an adverse employment action, and (3) a causal link existed between the protected activity and the [County's] action.' [Citations]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

A. *Protected Activity*

The County contends Velasquez's disclosure of confidential information to Robertson was not a "protected activity" because Velasquez never informed the County that his reason for disclosing his notes was to oppose discrimination. We disagree.

Substantial evidence supports the finding that the County knew Valesquez disclosed his notes to support Robertson's pending gender discrimination lawsuit because she first mentioned the notes during her deposition in that lawsuit. For these purposes, it does not matter whether McKendry's "loner" comment was actionable as long as Velasquez reasonably and in good faith believed it was. (*Miller v. Dept. of Corrections* (2005) 36 Cal.4th 446, 474.) Substantial evidence supports that finding here. Additionally, Velasquez's deposition testimony in the *Schweitzer* case and in his own lawsuit are "protected activities" that independently satisfy this element.

B. *Adverse Employment Action*

The County asserts that Velasquez was not subjected to "adverse employment action" within the meaning of FEHA. (§ 12940, subd. (h); *Yanowitz*,

5

*supra*, 36 Cal.4th at pp. 1050-1051.)  The County argues that none of its actions were "adverse" on their own or affected Velasquez's salary, benefits, rank, level of supervision, pension, peace officer status, office space, vacation or work hours. (See *Grube v. Lau Industries, Inc.* (7th Cir. 2001) 257 F.3d 723, 729 ["unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions"]; *Malais v. Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350, 358 ["assignment to a less preference position *alone* [does not] constitute[] an adverse employment action"].) But we do not view individual acts in isolation, and instead assess their "collective impact."  (*Wysinger v. Automobile Club of So. Calif.* (2007) 157 Cal.App.4th 413, 423.)  Moreover, "adverse" actions are not limited to those with immediate impact; it is enough that an employer's actions, in their totality, "are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career."  (*Yanowitz*, *supra*, at p. 1054.)

Applying the proper standards, the jury could rationally conclude that the County's course of conduct hurt Velasquez's chances for advancement and thus constituted adverse employment action.  The finding of misconduct in the first internal investigation was placed in Velasquez's personnel file for at least two years. The jury could reasonably infer that matters in Velasquez's personnel file would be relevant to future employment decisions; indeed, the question added to the 2009 deputy chief application was specifically designed to root out an applicant's problems with management.  Velasquez was also given a lower performance evaluation and he was transferred to a job usually reserved for rookie supervisors.

The County contends that two further considerations nevertheless preclude the jury's finding.  It argues that the jury should not have considered the lower performance evaluation, the transfer or the new application question because the trial court, when ruling on its summary adjudication motion, commented that these actions were not "adverse."  Because summary adjudication motions do not adjudicate *facts* and do not partially adjudicate causes of action (Civ. Proc. Code,

6

§ 437c, subd. (n); *Raghavan v. Boeing Co.* (2005) 133 Cal.App.4th 1120, 1125, 1134-1139; *Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1259), the trial court's comments are not conclusive. The County also asserts that *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, and *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, dictate dismissal of Velasquez's retaliation claims. They do not. Comparing different cases is rarely helpful because "[r]etaliation claims are inherently fact specific, and the impact of an employer's action in a particular case must be evaluated in context." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.) *McRae* and *Jones* are distinguishable in any event because the plaintiffs in those cases do not prove their employer's actions had an adverse effect on their employment conditions or opportunities; as described above, Velasquez carried his burden.

C. *Causation*

The County further contends that there is no substantial evidence that its actions were undertaken with a retaliatory motive because every testifying County decision maker disclaimed any such motive and because the County had legitimate, nonretaliatory reasons for its conduct toward Velasquez. But the jury necessarily found the County's evidence on these issues not to be credible. We cannot gainsay those credibility determinations. (*McCoy*, *supra*, 216 Cal.App.4th at p. 299 ["it is the jury, not the court, that is charged with determining the facts"].)

Moreover, substantial evidence supports the jury's finding that the County acted with a retaliatory motive. The adverse employment actions started shortly after Velasquez's testimony in the *Schweitzer* case and the decision makers were aware of his protected activities when they acted. This constitutes a prima facie case of retaliatory motive. (*Yartzoff v. Thomas* (9th Cir. 1987) 809 F.2d 1371, 1376.) To satisfy his ultimate burden of proof, Velasquez adduced additional evidence. (*Loggins v. Kaiser Permanente Intern.* (2007) 151 Cal.App.4th 1102, 1112.) His supervisors gave multiple and differing reasons for his transfer to the government fraud unit. There was also evidence that other Bureau employees had

disclosed information from prior personnel meetings without being investigated or disciplined. Many of the adverse actions occurred while upper management considered Velasquez to be a "malcontent." Differing managerial explanations for an employment action and disparate treatment of similarly situated employees both constitute circumstantial evidence of an employer's intent to retaliate. (*Rudin v. Lincoln Land Community College* (7th Cir. 2005) 420 F.3d 712, 723-724; *Colarossi v. Coty US, Inc.* (2002) 97 Cal.App.4th 1142, 1153; cf. *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 [plaintiff's personal belief of retaliatory motive not enough to prove retaliatory motive]; *Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1226-1229 [employer's termination of plaintiff for falsely filing sexual harassment claim not sufficient proof of retaliation].)

*Wrongful Constructive Termination*

A wrongful constructive termination claim requires proof that (1) the employer retaliated against the plaintiff-employee for "exercising a statutory right or privilege," (2) the retaliation created "working conditions that were so intolerable or aggravated" that a reasonable person in the employee's position would be compelled to resign (and that compelled the plaintiff-employee to resign), and (3) the employer deliberately created the "intolerable or aggravated" working conditions or knowingly permitted them to persist. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1249, 1251-1252, 1256; *Gibson v. ARO Corp.* (1995) 32 Cal.App.4th 1628, 1638, 1640.) Beyond disputing that it did not retaliate, the County contends there was insufficient evidence of the last two elements.

The County contends that the totality of its actions would not have compelled a reasonable person to resign. It notes that Velasquez himself waited nearly 18 months after the first performance evaluation before resigning. Because Velasquez had previously announced his intent to retire in January 2010, the County argues that his resignation in December 2009 was strategic. The County further asserts that it did not deliberately create any intolerable working conditions

8

or know that Velasquez found his working conditions to be intolerable.

We reject these arguments. Procedurally, the County requested and obtained a general verdict on damages. Because we are affirming the jury's verdict on the retaliation claim and the County does not argue that there are different damages for each claim, the retaliation claim independently supports the damages in this case. (See *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1157.)

Additionally, a rational jury could have accepted Velasquez's argument that the timing and escalation of the County's acts reasonably lead him to believe he was about to be fired. In the months immediately prior to his resignation, the Bureau opened its second internal investigation for conduct that other employees had committed without investigation or sanction. In the weeks immediately prior to his resignation, Velasquez received his 2009 performance evaluation from the same supervisor who was overseeing that investigation. The evaluation reported that Velasquez had engaged in the very misconduct the supervisor was still investigating. Just days before Velasquez resigned, the investigator refused to recuse himself. In light of the prior written reprimand and the likelihood he would receive a greater sanction for a second violation of Bureau policy, the jury could reasonably conclude, as Velasquez put it, that the hammer could come down on the last "nail in the coffin" any day. That Velasquez previously discussed a possible retirement date does not negate these working conditions; it also does not provide an alternative reason for his departure because Velasquez did not start contemplating a fixed retirement date until *after* he received the 2008 performance evaluation and the series of adverse employment actions had begun.

Velasquez also presented evidence that he had alerted the County that he found his working conditions to be intolerable: He mentioned a possible retaliatory motive for his 2008 overall rating in his appeal of that performance review; he told his supervisor he felt "ostracized" in November 2009; and he sent a letter indicating he was in "grievous distress" right after his December 2009 internal

9

investigation interview.

In sum, substantial evidence supports the wrongful constructive termination verdict.

*DISPOSITION*

The judgment is affirmed.  Costs on appeal are awarded to Velasquez.

NOT TO BE PUBLISHED.

HOFFSTADT, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

10

Denise de Bellefeuille, Judge

Superior Court County of Santa Barbara

_____

Office of County Counsel, Michael D. Schwartz, Special Assistant County Counsel, Wisotsky, Procter & Shyer, Alan E. Wisotsky for Defendant and Appellant.

Pine & Pine, Norman Pine, Beverly Tillett Pine, Janet R. Gusdorff, Law Offices of Mark Pachowicz, Mark R. Pachowicz, Law Offices of Maury Mills and Maury Mills for Plaintiff and Respondent.